SALEM REALTY CO. vs. FRANCIS V. MATERA.

Essex. May 16, 1980. — September 29, 1980.

Present: GOODMAN, DREBEN, & KASS, JJ.

*Attorney at Law,* Compensation. *Interest. Contract,* Compensation of attorney.

An attorney who was discharged from a contingent fee contract while the cases which were the subject of the contract were still pending resolution was entitled to a reasonable fee on a quantum meruit basis taking into consideration not only the services rendered but also the contribution of those services to the ultimate result achieved. [574-576]

A master's finding as to the fair value of the services rendered by an attorney who was discharged from a contingent fee contract before completion of the cases which were the subject of the contract was entirely reasonable [576-577]; and there was no error in awarding interest on the award commencing with the date of the attorney's counterclaim by which he sought compensation [577-578].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 3, 1976.

On transfer to the Superior Court the case was heard by *Fine,* J., on a master's report.

*James T. Ronan* for the plaintiff.

*Thomas D. Burns (James F. Kavanaugh, Jr.,* with him) for the defendant.

KASS, J. Salem Realty Co. (Realty) hired Francis V. Matera in 1969 on a contingent fee basis to represent it in connection with three land taking cases in Salem. In 1975, following a change in the identity of its controlling shareholders, Realty dismissed Mr. Matera while the three cases were still incomplete. The point in controversy is what Mr. Matera is entitled to receive in legal fees, having been barred by Realty from achieving the contingency contracted for, i.e., a recovery from the taking authority.

The case originated on Realty's petition in the Supreme Judicial Court to discharge a contingent fee agreement. See S.J.C. Rule 3:14(6), 351 Mass. 797 (1967). Realty brought a motion for summary judgment in that court founded on the proposition that Mr. Matera was to receive no more than the $10,000 minimum fee provided for in the contingent fee agreement. That motion was denied, and the court transferred the case to the Superior Court under G. L. c. 211, § 4A. Prior to the transfer, Mr. Matera filed a counterclaim asking for compensation calculated by using the contingent fee agreement as a guide. Following depositions and other discovery, the case was referred to a master. Superior Court Rule 49(2) (1974).

We have the benefit of a thoughtful and detailed master's report, and we take our facts from the master's findings, which we accept unless clearly erroneous, Mass.R.Civ.P. 53(e)(2), 365 Mass. 820 (1974), mutually inconsistent, contradictory or vitiated in view of the controlling law. *Covich* v. *Chambers*, 8 Mass. App. Ct. 740, 743 (1979).

Mr. Matera was first consulted by Realty, a corporation, in the latter part of 1968 when urban renewal takings by the Salem Redevelopment Authority, which had been in the wind, became imminent. All the stock in Realty was owned by a trust under the will of John A. Deery, who had died in 1954. Under the terms of the trust it was to end in 1974; thus it had five to six years to run in 1968. Realty had corporate counsel but selected Mr. Matera to assist it with its land taking cases because he was an eminent domain specialist of reputation. Three parcels appeared destined for acquisition: (a) the "A & P property" at 24-26 Federal Street and 9-11 Washington Street; (b) the "Woolworth property" at 198-206 Essex Street and 19-25 Church Street; and (c) a theater and parking lot at 180 Essex Street, 7-11 Church Street, and 7-23 St. Peter Street.

Discussions about compensation ensued, and in the interim Mr. Matera worked without a specific fee arrangement. Mr. Matera advanced various fee formulae, and the parties settled on terms requiring a retainer of $10,000 to be

credited against a fee of thirty-five percent of all sums recovered in excess of the taking authority's pro tanto payments. See G. L. c. 79, § 8A. Expenses of litigation, e.g., appraisers' fees, engineering reports, photographs and charts, were to be borne by the client. On July 29, 1969, Realty signed a fee agreement which conformed with the requirements of S.J.C. Rule 3:14, including a provision that the agreement was subject to that rule. Two of the trustees of the trust which owned the stock of Realty also signed the fee agreement on July 29, 1969, and the third trustee signed it November 3, 1969.

Rumblings of discontent about the fee agreement on the part of the beneficiaries of the trust developed at once and sputtered intermittently during 1969, 1970, 1973, 1974 and 1975. During the latter years the displeasure which the beneficiaries expressed concerned the slow progress of the cases more than the fee arrangement, although the latter issue still smouldered. Most of the opposition to the retention of Mr. Matera was raised by Gerald M. Shea, himself a lawyer in a large New York firm, who is a son of one of the beneficiaries.

In April, 1974, the case involving the A & P parcel came on for trial before a Superior Court judge sitting without jury, and Realty obtained a finding of damages that was $75,000 above the pro tanto award. The Salem Redevelopment Authority, displeased by that result, asked for a jury trial. G. L. c. 79, § 22, as appearing in St. 1973, c. 983, § 1. Negotiations to settle the case short of a second trial followed. Before their conclusion, Mr. Matera was discharged by Realty, whose stockholders now were the very persons who had earlier been the disgruntled beneficiaries of Deery's testamentary trust; that trust had terminated by its terms the previous year.

The master found no professional failure by Mr. Matera in connection with the eminent domain cases which might have justified a discharge for cause by Realty's new officers and stockholders, although he found that they "reasonably could have felt . . . [almost six years having elapsed since

the takings] that other counsel might press the cases with more vigor and diligence."[1]  New counsel settled the A & P parcel case on February 15, 1977, without a second trial, and proceeded to try the other two cases jury-waived.  The aggregate recovery above the pro tanto offers was $453,543, inclusive of interest (the master found the contingent fee agreement ambiguous as to whether interest was to be included in calculating the recovery over the pro tanto).

The master concluded that Mr. Matera was not entitled to recover under the fee agreement, but was entitled to the fair value of the services rendered by him.  Taking account of factors we shall discuss below, the master found the fair value of Mr. Matera's services in connection with the three properties to be $47,500 and recommended entry of judgment of $37,500 ($47,500 less the $10,000 retainer) with interest from March 24, 1976, the date of Mr. Matera's answer and counterclaim in the present case.  A Superior Court judge adopted the master's report and entered judgment accordingly.  Both sides appealed.

1. *The Status of the Contingent Fee Agreement.*[2]

Contingent fees are, of course, lawful in Massachusetts, S.J.C. Rule 3:14,[3] and, indeed, are ordinary in eminent domain cases.  MacKinnon, Contingent Fees for Legal Services 28 (1964).  There is no dispute that the fee agreement between Mr. Matera and Realty complied with the requirements of rule 3:14, notably those which appear in paragraphs (4) and (5) of the rule.  By the terms of the rule (see paragraph [6]), the "reasonableness of a contingent fee agreement shall be subject to review by a court."  See *Cameron* v. *Sullivan,* 372 Mass. 128, 132 (1977); *Snow* v.

---

[1] No significant delay, the master found, was occasioned by lack of diligence on Mr. Matera's part once the petitions for assessment of damages were filed.  Mr. Matera had been leisurely about the filing of the latter.

[2] In our consideration of the applicable law we owe a heavy debt to the well-documented discussion furnished by the master in his report.

[3] See *McInerney* v. *Massasoit Greyhound Assn.*, 359 Mass. 339, 349-351 (1971).

*Mikenas,* 373 Mass. 809, 812-813 (1977). In conferring this power to review the fairness of contingent fee agreements, rule 3:14 reinforces the general principle that lawyers' fees shall be reasonable, giving due weight to all the circumstances. See *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 568-569 (1933); *First Natl. Bank* v. *Brink,* 372 Mass. 257, 264 (1977); *DeSautels, petitioner,* 1 Mass. App. Ct. 787, 794 (1974).

Apart from being subject to review, a facially valid contingent fee agreement does not insure the lawyer's employment until the case is completed. A client's right to change his lawyer at any time for any cause or no cause at all is inherent in the characteristics of trust and confidentiality in the lawyer-client relationship. See *Walsh* v. *O'Neill,* 350 Mass. 586, 590 (1966); *Duggan* v. *Taunton,* 360 Mass. 644, 649 (1971); MacKinnon, Contingent Fees for Legal Services 77 (1964); Speiser, Attorneys' Fees § 4:32 (1973). If it is bootless to make an opera singer sing, *Lumley* v. *Wagner,* 42 Eng. Rep. 687, 693 (Ch. 1852), it makes still less sense in a civil case to require that a lawyer advocate and a client take advice once they have had a falling out. Not only is contractual yoking of lawyer and client impractical; it would diminish the integrity of the Bar and undermine public confidence in it.

2. *The Appropriate Measure of Compensation.*

In fact, Mr. Matera has never challenged the right of his client to change lawyers. But the right of a client so to do has not much value if the client is put at risk to pay the full contract price for services not rendered and to pay a second lawyer as well. *Fracasse* v. *Brent,* 6 Cal. 3d 784, 789 (1972).[4] That might well force a choice between adherence to a lawyer in whom the client has lost faith or the risk of double fees. For the discharged lawyer, therefore, recovery cannot be on the contingent fee contract, but for a reason-

---

[4] For example, in this case the successor lawyer made an agreement with Realty for a fee of twenty-five percent of the amount recovered over the pro tanto, inclusive of interest on any judgment.

able fee on a quantum meruit basis. *Id.* at 791. MacKinnon, *Contingent Fees for Legal Services* 77-80 (1964). Speiser, *Attorneys' Fees* § 4:36, at 187 (1973), and cases cited in n.94.

Since the contingent fee agreement will not govern a discharged lawyer's compensation, we cannot agree with Realty's contention that Mr. Matera is entitled to no more than the minimum fee of $10,000 for which the agreement provides. Realty cannot have it both ways. It cannot abrogate the agreement on the high side and insist on its terms on the low side. That would have been manifestly unfair, for example, had Mr. Matera been dismissed after a second trial of the A & P case to a jury, but before the jury returned a verdict. It is only a little less dramatically unfair on the actual facts of the case.

In applying a quantum meruit standard, the terms of the abrogated fee agreement provide helpful guidance, and the discharged attorney is entitled to consideration not only of the services rendered but also the contribution of those services to the ultimate result achieved. *Elbaum* v. *Sullivan,* 344 Mass. 662, 666-667 (1962). *Perkins* v. *Blake,* 3 Mass. App. Ct. 415, 418-419 (1975). Other factors to be considered are the customary ones applicable in measuring a legal fee: the special skills which may have been brought to bear, the complexity of the case, the size of the case in terms of dollars, the caliber of the services, the fees usually charged for work of the kind involved, the time spent, and the success achieved. *Cummings* v. *National Shawmut Bank,* 284 Mass. at 569. *Muldoon* v. *West End Chevrolet, Inc.,* 338 Mass. 91, 96 (1958). *First Natl. Bank* v. *Brink,* 372 Mass. at 265-267.

3. *The Amount of the Fee.*

Necessarily, the setting of a fair fee is a matter of judgment since some of the criteria involved, e.g., skill required, complexity of the case, imagination exhibited, customary practices, are not quantities which can be added or multiplied. In arriving at what he found to be the fair value of Mr. Matera's services the master considered: (1) the amounts of money and responsibility involved in the cases; (2) the good result obtained by Mr. Matera in the trial of the A & P

case; (3) Mr. Matera's supervision of the appraisal in the Woolworth case; (4) the development of an appraisal theory by Mr. Matera in the Paramount case; (5) time Mr. Matera spent;[5] (6) Mr. Matera's experience and reputation as a specialist; (7) the Hydra-headed nature of the client, i.e., the corporation, the trustees of the trust which owned its stock when Mr. Matera was hired, and the beneficiaries of that trust; (8) the utility of Mr. Matera's work to his successor; (9) expert testimony of two other lawyers as to customary fees charged in eminent domain cases and what is expected of a lawyer in such cases; (10) the dissatisfaction with Mr. Matera's performance indicated by Realty; and (11) the testimony concerning the extent of Mr. Matera's efforts and contributions. Weighing these considerations, the master arrived at his finding of $47,500 as the fair value of Mr. Matera's services. This strikes us as an entirely reasonable judgment and we see no reason to disturb it.

4. *Interest on the Award of Fees.*

The recommendation of the master, and the judgment entered on the basis of the master's report, provided for the payment of interest on the award of $47,500 (less the retainer paid) beginning with the date of Mr. Matera's counterclaim. This was consistent with *Abrams* v. *Loew*, 335 Mass. 96, 100 (1956), in which it was held that the inclusion of interest in a suit for the fair value of legal services should run from the date of the writ. Mr. Matera's counterclaim in the instant case, which asked for "the compensation due to . . . [him] under the agreement or as the fair value of the services rendered by" him is the analogous point of demand. Compare *Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159, 181-182 (1979), where interest ran from the time the master

---

[5] Because he had the cases on a contingency basis, Mr. Matera did not keep time records. The master reconstructed the time Mr. Matera probably spent by extrapolations from Mr. Matera's testimony about what he did, the time records of associates of Mr. Matera and the time spent by counsel for the taking authority. This case suggests the utility of time records to a lawyer even when he does not expect time to be the basis for billing.

filed his report as provided by G. L. c. 235, § 8, but where the court observed that beyond the statutory mandate, considerations of relative hardship should govern calculation of interest from an earlier date. See *Glenn Acres, Inc.* v. *Cliffwood Corp.*, 353 Mass. 150, 156 (1967).

The judgment shall be modified so as to add thereto a provision that the contingent fee agreement is discharged. As so modified, the judgment is affirmed. Since both parties have appealed, costs shall not be taxed against either party.

*So ordered.*