**Joseph PROVANZANO**

**v.**

**NATIONAL AUTO CREDIT, INC. f/k/a Agency Rent–A–Car, Inc.**

No. CIV.A. 95–CV–12370–RGS.

United States District Court, D. Massachusetts.

June 4, 1998.

Litigant's Attorney, Alan E. Lipkind, Lane & Altman, Henry F. Owens, III, Lane, Altman & Owens, Boston, MA, for Plaintiff.

Joseph S. Provanzano, Peabodyh, MA, pro se.

---

Marilyn D. Stempler, Wayne F. Dennison, Brown, Rudnick, Freed & Gesmer, Boston, MA, Thomas E. Peisch, Thomas J. Gallitano, Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

Joseph Provanzano, an attorney, brought this lawsuit against a former client, Agency Rent–A–Car Inc. (Agency), now known as National Auto Credit, Inc., for breach of contract and violation of Chapter 93A.[1] In 1993, Agency, an Ohio-based corporation, operated a rental car business in Massachusetts. In September of 1993, Provanzano and Agency entered into a contract (the Agreement) whereby Provanzano was to represent Agency for five years on all claims arising out of its Massachusetts rental operations. Agency was to pay Provanzano a monthly fee of $12,500 for his services, plus certain agreed costs. On September 30, 1995, Agency sold its rental car business to Avis and ceased doing business in Massachusetts. On October 31, 1995, Agency terminated Provanzano. Provanzano argues that because the Agreement was a "hell or high water" contract, he is entitled to the balance of his five year retainer ($437,500, more or less).

On April 30, 1997, Agency filed this motion for summary judgment, contending that, because under Massachusetts law, a client may terminate a lawyer at any time (with rare exception), for any reason, or for no reason at all, it is liable at most in quantum meruit for any unpaid work that Provanzano actually performed. Agency maintains that any dispute of fact as to whether it terminated Provanzano for cause is irrelevant. Finally, Agency argues that Provanzano's Chapter 93A claim is barred because an attorney-client relationship does not involve "trade or commerce."

Provanzano contends that the Agreement is a "general retainer," and that he is thus entitled to the full value of the contract. Provanzano portrays himself as the innocent victim of a "witch hunt" fomented by a power struggle between Agency's former general counsel and the company's majority owner. Provanzano also complains that Agency paid him erratically, failed to cooperate in the defense of some lawsuits, and lied about the amount of litigation directed against it in violation of Securities and Exchange Commission rules.[2]

Agency has also moved to strike those portions of Provanzano's statement of disputed facts that involve pre-contract negotiations and the events leading to his termination, contending that they are irrelevant to the issue of law before the court.[3] On a more fundamental level, Agency maintains that some of the material Provanzano includes in his pleadings breaches the attorney-client privilege. A hearing was held on the motions on October 8, 1997.[4]

1. The lawsuit was originally filed in the Massachusetts Superior Court. Agency removed the case to this court based on the parties' diversity of citizenship.

2. Provanzano does not allege that he was terminated for voicing complaints about Agency's alleged SEC violations. The purpose of these allegations appears rather to paint Agency's senior management in the most unflattering light possible, presumably to lend credence to the suggestion that Agency terminated Provanzano for some dark motive. Agency objects to Provanzano's portrayal and responds in kind, noting that Provanzano has twice been the subject of bar disciplinary proceedings.

3. The motion to strike will be DENIED. The court will, however, consider only those allegations that are material to the immediate dispute.

4. On the eve of the hearing, Provanzano filed a surreply that Agency immediately moved to strike as untimely. At the hearing, the court allowed Agency's motion. Provanzano has since filed a motion to reconsider the court's ruling, a motion to amend the Amended Complaint, a motion to file a supplemental affidavit, a post-hearing brief addressing issues Provanzano claims were raised for the first time at oral argument, and a "notice" of recent authority. Agency has opposed Provanzano's motions, filed a post-hearing brief in response to Provanzano's filings, and requested (by way of a letter) that the court strike as untimely the notice of recent authority.

The court will DENY the motion to reconsider, but notes that because the parties have filed post-hearing briefs most of the material contained in the surreply is now before the court. The court

## FACTS

The material facts are these. The Agreement was entered in September of 1993. Provanzano had represented Agency on a case by case basis. The material terms of the Agreement were as follows.

WHEREAS, AGENCY ... desires to engage exclusive Massachusetts legal counsel for the defense and/or the processing of claims and/or legal/civil actions filed or brought against AGENCY, Renters of AGENCY's automobiles, Operators of AGENCY's automobiles, and/or AGENCY's employees, agents or servants; AND

WHEREAS, JOSEPH S. PROVANZANO, ESQUIRE, hereinafter "ATTORNEY", ... desires to provide exclusive Massachusetts legal counsel to AGENCY for the defense and processing of claims against AGENCY, Renters of AGENCY's automobiles, Operators of AGENCY's automobiles, and/or AGENCY's employees, agents or servants;

## IT IS THEREFORE AGREED BY AND BETWEEN AGENCY AND ATTORNEY AS FOLLOWS:

FIRST: THAT this AGREEMENT is to commence as of the first day of September, 1993.

SECOND: THAT this AGREEMENT is to have an initial Term of and shall continue and remain in full force and effect for, five (5) years, with the initial Term of this AGREEMENT to end as of the first day of September, 1998....

FOURTH: THAT, during the Term of this AGREEMENT, AGENCY agrees to engage the ATTORNEY, on an exclusive basis within the Commonwealth of Massachusetts, for the ATTORNEY to provide legal services regarding the defense of and/or the processing of claims and/or civil actions maintained against AGENCY....

FIFTH: THAT, during the Term of this AGREEMENT, ATTORNEY agrees to provide legal services to represent AGENCY in the defense of and as concerns the processing of claims and civil actions against and/or involving AGENCY....

will permit the filing of the supplemental affidavit and the notice of recent authority. The court will also ALLOW Provanzano's motion to amend his Amended Complaint to add a specific claim in the alternative for recovery in quantum meruit. There is no prejudice to Agency as it has contended from the beginning that this is the

SIXTH: ... which shall include only matters within the Commonwealth of Massachusetts.

SEVENTH: THAT, during the Term of this AGREEMENT, AGENCY agrees to make payment to the ATTORNEY, for the services provided by the ATTORNEY in accordance with and under the terms and conditions of this AGREEMENT, in the sum of TWELVE THOUSAND FIVE HUNDRED ($ 12,500.00) DOLLARS per month, which shall be paid by AGENCY to ATTORNEY [during the second week of the month] ....

Article Eight provided that Agency would pay Provanzano's costs. The Agreement then stated that:

NINTH: THAT, during the Term of this AGREEMENT, ATTORNEY and AGENCY agree that there may exist such matters and/or cases commonly known as "Conflict Cases", which will require that AGENCY employ additional legal counsel, in addition to the ATTORNEY.... If AGENCY advises that additional legal counsel shall be engaged, AGENCY and ATTORNEY agree that the ATTORNEY shall engage said additional counsel or counsels with the compensation therefor to be billed on an hourly basis not to exceed SEVENTY FIVE ($ 75.00) DOLLARS per hour, plus costs and expenses, as stated hereinabove.

FIFTEENTH: THAT this AGREEMENT may be amended and/or modified by negotiations to be held by the parties in good faith should AGENCY announce, and in fact then, withdraw from renting automobiles within the Commonwealth of Massachusetts.

SEVENTEENTH: Nothing contained in this Agreement shall be deemed to limit Agency's choice of counsel for matters not involving claims for bodily injury arising out of motor vehicle accidents involving an automobile(s) owned or leased by Agency.

A five year contract and a $150,000 yearly retainer were not the only alternatives discussed. Agency and Provanzano also considered a three year contract and a yearly retainer of $165,000. Agency chose the discounted retainer in exchange for agreeing to the longer contract term.[5]

only relief to which Provanzano might be entitled.

5. Provanzano alleges that Agency made promises during the negotiations that the payments under the Agreement were "guaranteed." Because the terms of the contract are not ambiguous (neither

In February or March of 1995, the parties amended the Agreement to shorten its term from five to four years contingent upon Agency tendering Provanzano's monthly payments in a timely fashion. The pertinent sections of the Amended Agreement are as follows.[6]

### AMENDED AGREEMENT

*WHEREAS,* AGENCY has notified the "ATTORNEY" that AGENCY desires to obtain/possess an Option to Amend/Alter the Original AGREEMENT between the parties so that AGENCY may alter the Original AGREEMENT's term, presently to expire as of September 1, 1998, to an AGREEMENT that expires as of September 1, 1997 as concerns the "Retainer Fee Payments" as stated hereinafter, and which thereafter may be further negotiated to extend or be continued, all as stated within the Original AGREEMENT; AND

*WHEREAS,* The "ATTORNEY" desires to receive payment from AGENCY exactly as called for within the AGREEMENT;

### IT IS THEREFORE AGREED BY AND BETWEEN AGENCY AND ATTORNEY AS FOLLOWS:

*FIRST:* THAT this AGREEMENT, as AMENDED herein, is to commence as of the first day of September, 1993.

*SECOND:* THAT this AGREEMENT is to have an initial Term of, and shall continue and remain in full force and effect for, five (5) years, with the initial Term of this AGREEMENT to end as of the first day of September, 1998.

THAT however, as concerns the Retainer Fee Payments to be paid pursuant to this AGREEMENT and as further stated hereinafter, if and only if AGENCY makes timely payment of each, every and all Retainer Fee Payments and all other Invoices invoiced pursuant to this AGREEMENT, all as stated hereinafter, (both as due from March 1, 1995 through August 30, 1997) then and only then, and conditioned expressly thereupon, the Term of this AGREEMENT as concerns Retainer Fee Payments shall end as of September 1, 1997, instead of September 1, 1998. Notice of untimely payments is not called for or required and the acceptance of untimely payments shall not waive any rights of the ATTORNEY. The AGREEMENT thereafter may be further negotiated to extend or be continued, all as stated within Paragraph FIFTEENTH of the Original AGREEMENT; [7]

On September 30, 1995, Agency sold its rental car business to Avis and ceased doing business in Massachusetts. On October 31, 1995, Agency terminated Provanzano. Apparently anticipating the termination, Provanzano filed this case on September 26, 1995, seeking to enforce the terms of the

---

party contends otherwise), this has no import. "Business people understand that much of what is said during the negotiation of a business agreement never becomes part of the final bargain. Only what matters is reduced to writing and signed." *McCartin v. Westlake,* 36 Mass.App.Ct. 221, 232, 630 N.E.2d 283 (1994).

6. There is a dispute of fact regarding the circumstances that motivated the amendment of the Agreement. At oral argument, the court questioned the parties as to whether Article 15 of the Agreement might not be dispositive of the entire case given the undisputed fact that Agency terminated Provanzano after withdrawing from the auto rental business in Massachusetts. Provanzano argues that Article 15 is inapplicable because Agency had disclosed its intention to withdraw from Massachusetts as a prelude to the negotiation of the Amended Agreement. Provan-

zano argues that Agency cannot announce its intention to withdraw from Massachusetts more than once as a means of manipulating its obligations under the Agreement. Agency disputes Provanzano's recollection of events, but argues that the chronology is immaterial because it has a right independent from any right granted in the Agreement to terminate Provanzano.

7. The parties apparently had a second agreement involving subrogation cases. Neither party, however, has been able to produce a copy of the agreement and disagree about its terms. Provanzano alleges that these included a separate contingent fee arrangement. Agency argues that the second agreement was subsumed in the Amended Agreement, but in any event is governed by the same rule permitting a client to freely discharge an attorney.

Agreement to its expiration date on September 1, 1998.

## DISCUSSION

The case is largely determined by whether one views the Agreement as a contingent fee arrangement, as a specific retainer, or as a general retainer. Agency contends that the Agreement is either a specific retainer, or is sufficiently analogous to a contingent fee agreement to be governed by the law applicable to such agreements. That law is set out in *Salem Realty Co. v. Matera,* 10 Mass. App.Ct. 571, 575, 410 N.E.2d 716 (1980), *aff'd,* 384 Mass. 803, 426 N.E.2d 1160 (1981).[8]

[A] facially valid contingent fee agreement does not insure the lawyer's employment until the case is completed. A client's right to change his lawyer at any time for any cause or no cause at all is inherent in the characteristics of trust and confidentiality in the lawyer-client relationship. See *Walsh v. O'Neill,* 350 Mass. 586, 590, 215 N.E.2d 915, (1966), *Duggan v. Taunton,* 360 Mass. 644, 649, 277 N.E.2d 268 (1971). MacKinnon, Contingent Fees for Legal Services 77 (1964); Speiser, Attorneys' Fees § 4:32 (1973). If it is bootless to make an opera singer sing, *Lumley v. Wagner,* 42 Eng.Rep. 687, 693 (Ch. 1852), it makes still less sense in a civil case to require that a lawyer advocate and a client take advice once they have had a falling out. Not only is contractual yoking of lawyer and client impractical; it would diminish the integrity of the bar and undermine public confidence in it. . . . In fact, [the defendant] has never challenged the right of his client to change lawyers. But the right of a client so to do has not much value if the client is put at risk to pay the full contract price for services not rendered and to pay a second lawyer as well. *Fracasse v. Brent,* 6 Cal.3d 784, 789, 100 Cal.Rptr. 385, 494 P.2d 9 (1972). That

might well force a choice between adherence to a lawyer in whom the client has lost faith or the risk of double fees. For the discharged lawyer, therefore, recovery cannot be on the contingent fee contract, but for a reasonable fee on a quantum meruit basis.

Agency also relies on *Smith v. Binder,* 20 Mass.App.Ct. 21, 477 N.E.2d 606 (1985), a case in which a lawyer demanded a $8,500 "non-refundable" retainer to represent two clients in several criminal actions. After a parting of the ways, the lawyer argued that he was entitled to keep the retainer. The Appeals Court, however, ordered the retainer refunded.

Essential to the lawyer-client relationship is the client's right to change his lawyer at any time—even without cause. *Salem Realty Co. v. Matera,* 10 Mass.App.Ct. 571, 575, 410 N.E.2d 716 (1980). . . . Moreover, if he discharges his lawyer, the client is not bound to pay for services not rendered. Otherwise the right to change lawyers would be of little value. Ibid. A discharged lawyer who has not rendered substantial performance cannot recover on a contingent fee contract, but may only seek a reasonable fee on a quantum meruit basis. *Salem Realty Co. v. Matera,* 384 Mass. at 804, 426 N.E.2d 1160. The same principle applies here. The defendants, who have the burden of proof, see *First National Bank of Boston v. Brink,* 372 Mass. 257, 264, 361 N.E.2d 406 (1977), are entitled to only such fees as they can show are reasonable for the services actually performed.

Id., at 23–24, 477 N.E.2d 606.

Agency concedes that the Agreement is not a typical contingent fee arrangement and that no Massachusetts case discusses a fee Agreement identical to the one it entered with Provanzano.[9] Agency argues, however,

---

8. I have quoted at length from the parties' principal cases, in part because they represent basically all that Massachusetts has had to say on their respective subjects, and in part because their density defies capsulization.

9. Agency, however cites several analogous cases from other jurisdictions. See *Anton Raleigh & Wynne v. Wellston Fire Protection Dist.,* 671

S.W.2d 378, 379 (Mo.App.1984) (reversing summary judgment for a law firm in part because, despite a five year retainer agreement with a fixed monthly fee, the client had an absolute, if implied right, to terminate the agreement without incurring contract liability); *Estate of Forrester v. Dawalt,* 562 N.E.2d 1315, 1316–1317 (Ind. App.1990) (allowing an attorney to retain a $15,-

that the fundamental principle enunciated in *Salem Realty* and *Smith* should apply, that is, that Provanzano should no more be permitted to collect a fee for legal services that he has not, and will not, perform than the attorneys in those cases were entitled to the full contract price for their services. To permit him to do so would violate the spirit of at least two disciplinary rules: Rule 1.5(a) ("[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or excessive fee"); and Rule 1.16(d) (a lawyer who is terminated shall refund any part of an advance fee that he has not earned).[10]

■ Provanzano argues that both *Smith* and *Salem Realty* are inapposite because the Amended Agreement is a general retainer agreement subject to different rules. Provanzano maintains that the Appeals Court in *Smith* recognized the distinction between a specific and a general retainer, by noting in its discussion of the facts that "[t]here was no suggestion that the $8,500 was a fee to insure counsel's future services as contrasted with an advance payment for those services." *Smith*, 20 Mass.App.Ct. at 23 n. 4, 477 N.E.2d 606, citing *Blair v. Columbian Fire-*

*proofing Co.*, 191 Mass. 333, 337, 77 N.E. 762 (1906).[11]

In *Blair*, which predates the modern disciplinary rules, an attorney sued a client who had engaged him in five separate lawsuits. The attorney alleged that the client owed $1,300 in unpaid legal fees, despite the fact that the client had made several payments totaling $1,050. The attorney argued that the payments were general retainer fees and could not be credited towards his bill for legal services. The jury found for the attorney, despite the fact that there was unconverted evidence that a $250 payment had been made "on account." The Supreme Judicial Court found that the jury had erred as to the $250 payment and ordered a new trial, stating:

> [w]e fear that the jury decided the case without an adequate understanding of the law in regard to retainers. The word "retainer" has been defined as signifying: "The act of a client by which he engages an attorney or counselor to manage a cause, either by prosecuting when he is plaintiff, or defending when he is defendant. A retaining fee is a fee given to counsel on being consulted, in order to

000 fixed fee retainer for the representation of an estate would have had a chilling effect on the client's right to discharge an attorney); *O'Brien v. Plumides*, 79 N.C.App. 159, 339 S.E.2d 54, 55 (1986) (a discharged attorney was not entitled to collect a full fixed-fee retainer); *Olsen v. City of Englewood*, 889 P.2d 673, 676 (Colo.1995) (a discharged law firm was entitled to a quantum meruit payment only, not a monthly fee for the duration of tort litigation pursuant to its contract); *AFLAC, Inc. v. Williams*, 264 Ga. 351, 444 S.E.2d 314, 317 (1994) (penalty clause of a seven-year retainer agreement requiring client to pay 50% of sums due for the remainder of the contract term held unenforceable); *Matter of Cooperman*, 83 N.Y.2d 465, 611 N.Y.S.2d 465, 633 N.E.2d 1069, 1072 (1994) (non-refundable retainer fee agreement clashed with a public policy against holding clients "hostage"); *LaRocco v. Bakwin*, 108 Ill.App.3d 723, 64 Ill.Dec. 286, 439 N.E.2d 537, 541–542 (1982) (rejecting lost profits recovery under the theory that the plaintiff attorney had detrimentally relied on an alleged lifetime employment agreement as undercutting a client's right to terminate an attorney at will).

10. While the citations are to the Massachusetts Rules of Professional Conduct, adopted effective January 1, 1998, they are identical in content to DR–106(B) and DR–2–110(A)(3). the disciplinary

rules cited by defendant that were in effect when Provanzano was terminated.

11. Provanzano also points to *Duggan v. City of Taunton*, 360 Mass. 644, 648 n. 7, 277 N.E.2d 268 (1971) where the Supreme Judicial Court stated in dicta that "[w]e do not rely upon the commission's first contention, citing *Philbrook v. Moxey*, 191 Mass. 33, 37, 37, 77 N.E. 520 [(1906)] that there is a general Massachusetts rule, similar to that stated in *Tenney v. Berger*, 93 N.Y. 524, 529, ... that a client may discharge an attorney at any time without cause and pay only for services therefore rendered. The *Philbrook* case seems to us to lay down no general rule denying recovery for breach of a valid and sufficiently specific contract between an attorney and a client. See *Gilman v. Lamson Co.*, 234 F. 507, 510 (1st Cir. [1916]—power to discharge, in the circumstances, not to be based upon 'taste' but on 'cause').... Doubtless, courts will scrutinize carefully agreements for legal services. See *Boston Bar Ass'n. v. Hale*, 197 Mass. 423, 437[, 83 N.E. 885] [(1908)]. See also *Walsh v. O'Neill*, 350 Mass. 586, 590[, 215 N.E.2d 915] [(1966)]; *McInerney v. Massasoit Greyhound Assn. Inc.*, 359 Mass. 339, 351–353[, 269 N.E.2d 211] [(1971)]. In the view we take of the case, we need not deal with these decisions in greater detail."

insure his future services." Bouvier's Law Dictionary. The principles of law applicable to claims of attorneys for services are not different from those applicable to claims of surveyors, or mechanics, or farmers. The claimants are to receive a reasonable compensation for that which they do or furnish under their contract. No other payment is required or can be enforced. The rule as to retainers, as distinguished from specific services of attorneys at law, is that, upon making an engagement for services, the attorney is to be paid a reasonable compensation for being so bound. In determining what sum is reasonable, the interests of the attorney and those of the client should be considered. The attorney, by his engagement, gives up the possibility of being employed by the adverse party in the very matter to which the retainer relates, and the matter may be of such a kind that he gives up the possibility of being employed by others in other kindred matters in which employment would be adverse to the interest in which he is retained. But this disadvantage, for which he must be compensated, carries with it the advantage, if his retainer is for active service, of having employment, and being paid for what he does. Viewed from the side of the client, the benefit for which he should pay the retainer is the assurance that he will have the services of the man of his choice, and will prevent his adversary from having his services, to the end of the proceedings to which the retainer relates. But this advantage is to be considered in connection with the fact that he will be obliged to pay at a reasonable rate for the service that is rendered. In determining what is a reasonable sum to be charged by an attorney for entering into such a relation, a variety of considerations are pertinent ... [including] the probability or improbability of the retainer's interfering with his professional relations with other persons who are, or who are likely to become, his clients; the magnitude ... of the business for which he is retained; and the probability or improbability of its bringing him large remunera-

tion from the client retaining him. If his retainer is general, including all business of the client for a stated period, the pertinent considerations are different from those resulting from an employment for a single case. As was said by the court in *McLellan v. Hayford*, 72 Me. 410, 39 Am. Rep. 343: "The proper scope and application of the right to charge retainers is to remunerate counsel for being deprived, by being retained for one party, of the opportunity of rendering services for and receiving pay from the other; not to swell the amount of the bill which accrues for services rendered throughout the progress of the cause, and contains specific charges for all."

Id., at 336–337, 77 N.E. 762. The *Blair* court, however, went on to say that

payment can be collected for a retainer only to the extent of reasonable compensation for entering into the new relation in the matter to which the engagement relates.... If the payments were made by the defendant with an understanding, warranted by the communications between the parties, that they were to be applied on the account, they must be so applied. The case was submitted to the jury on the question whether the payments were made by the defendant as payments of retainers no part of which were to be credited on the account of charges for services.... Because as to one of these payments the evidence does not warrant the finding that it was [tendered as a retainer payment as opposed to a payment for actual services rendered] the entry must be: Exceptions sustained.

Id., at 337–338, 77 N.E. 762. Provanzano argues that under *Blair*, a Massachusetts lawyer is free to contract for the payment of a non-refundable general retainer in exchange for his promise that he will reject any conflicting clients and be ready and able to represent the client if and when the need arises. Under this theory, the attorney is entitled to contract damages if there is a breach.[12]

---

**12.** Provanzano also relies on three other Massachusetts oriented cases, *Philbrook v. Moxey*, 191

Mass. 33, 37, 77 N.E. 520 (1906), *Gilman v. Lamson Co.*, 234 F. 507, 518–522 (1st Cir.1916),

It is not clear that *Blair* goes as far as Provanzano would take it. The crux of the holding in *Blair* centered on whether the client intended his payments as general retainers or as fees for services rendered. Assuming that a modern Massachusetts court would recognize the validity of a general retainer agreement, a by no means certain proposition,[13] the Agreement between Agency and Provanzano does not resemble the one described in *Blair*.[14]

Under the terms of the Agreement, Provanzano promised, in exchange for a guaranteed monthly payment, to accept whatever number of cases Agency's Massachusetts operations generated. Presumably the volume of cases fluctuated with the flow of Agency's business, higher perhaps in peak vacation periods, and lower in the winter months. Provanzano was paid in monthly installments for the work that he performed, albeit at rates that would vary depending upon the number of cases that he was required to handle at any given time. Agency, in other words, did not contract for Provanzano's availability and then separately for his services. It contracted solely for the latter. Once these were terminated, Provanzano was as free to take on conflicting clients as was any other unengaged attorney.[15]

■ In the alternative, Provanzano argues that if his agreement is analogous to a contingent fee agreement, he is still entitled to contract damages under the holding of *Opert*

v. *Mellios*, 415 Mass. 634, 636, 614 N.E.2d 996 (1993). Provanzano's reliance on *Opert*, however, is misplaced. In *Opert*, a client terminated his attorney after entering into a contingent fee contract guaranteeing the lawyer thirty-three percent of any recovery on a personal injury claim. After the lawyer negotiated $3,300 payment from an insurance carrier for property damage to the client's vehicle, the client fired him. A new attorney filed a lawsuit and eventually won a personal injury settlement of $75,000. The first attorney then sued to collect the one-third payment agreed under the original contract. The Supreme Judicial Court stated in response that:

[t]he general rule now recognized in Massachusetts and a majority of States is that a client's discharge of an attorney ends the attorney's right to recover on the contract of employment and, thereafter, an attorney can recover only for the reasonable value of his services on the basis of quantum meruit. *Salem Realty Co. v. Matera*, 384 Mass. 803, 426 N.E.2d 1160 (1981). C. Wolfram, Modern Legal Ethics § 9.5.2, at 546, (1986).... In *Salem Realty Co. v. Matera*, supra, at 804, 426 N.E.2d 1160, however, this court stated that it might permit an attorney to recover under a contingent fee contract on a showing of substantial performance, bad faith termination by the client, and other factors. The court did not grant the attorney recov-

and *Dixon v. Volunteer Co-op. Bank*, 213 Mass. 345, 100 N.E. 655 (1913), although the agreements in those cases bear little resemblance to the Agreement at issue here. Provanzano does, however, cite two cases from other jurisdictions that in essence recognize the validity of a general retainer agreement. See *Kelly v. MD Buyline, Inc.*, 1998 WL 169502, *3 (S.D.N.Y. April 1, 1998) and *Raymark Industries, Inc. v. Butera, Beausang, Cohen & Brennan*, 1997 WL 746125, 1997 U.S. Dist. Lexis 19070 (E.D.Pa.1997).

13. As the age of the cases suggests, general retainers have largely disappeared from the modern practice of law. Cf. *Estate of Forrester*, supra, 562 N.E.2d at 1318 n. 3. Whether this is because of ethical reservations, or for commercial reasons, I cannot say, although courts in other jurisdictions have implied that the fiduciary principles governing the attorney-client relationship are inconsistent with general retainer agreements. See, e.g., *Olsen v. City of Engle-*

wood, supra, 889 P.2d at 675–676; *Matter of Cooperman*, supra, 611 N.Y.S.2d 465, 633 N.E.2d at 1071–1072.

14. One could envision a client manipulating a general retainer agreement to receive the benefit of an attorney's promised availability by simply waiting to see if the attorney's services were actually needed, and if not, firing the attorney just before the agreement expired. (Assuming, of course, that the attorney was foolish enough to agree to payment only at the end of the term). If damages were then measured in quantum meruit, the client would escape from having to pay the attorney anything at all.

15. Provanzano's one salient point is that Agency was able to negotiate a lower yearly fee in exchange for its promise of a contract term. A determination of the fair value of Provanzano's services might well include some reimbursement of this discount.

ery of the contingent fee in that case, but stated:

> We do not formulate a rule ... which would bar recovery on a contingent fee agreement in all cases by an attorney who has rendered substantial performance. That question must be left open because on this record we are not satisfied that [the attorney] rendered substantial performance before the plaintiff terminated its contract without good cause but without bad faith. Factors which may be weighed on another day when we are called upon to espouse or to reject a rule permitting recovery on a contingent fee agreement (as contrasted with recovery in quantum meruit) after its unilateral termination are the bad faith of the party terminating it, ... the extent of the performance left incomplete, the cost to the client of legal services necessary to complete the work, the conduct of the attorney in performing the agreement, and the wording of the agreement. In setting forth these factors (and the list is not necessarily complete) we do not wish to be understood as adumbrating a new rule. However, if an appropriate case is presented to us for appellate review, we shall consider these factors in determining whether to permit recovery on the contract in contrast to the restitutional species of recovery in quantum meruit. Id.

Neither does this case present us with appropriate circumstances to decide the issue. The evidence, viewed "with an indulgence" toward the party against whom summary judgment has been rendered, see Conley v. Massachusetts Bay Transp., Auth., 405 Mass. 168, 173, 539 N.E.2d 1024 (1989), quoting Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc., 396 Mass. 818, 822, 489 N.E.2d 172 (1986), raises questions whether: (1) the defendant terminated the contract in bad faith, (2) the plaintiff had rendered substantial performance on the contract, (3) the defendant incurred costs for legal services to complete the agreement, (4) the plaintiff's conduct in handling the claim was proper, and (5) the agreement reached by both parties was fair. Resolution of questions 4 and 5 in the plaintiff's favor would normally result in the plaintiff's (sic) being entitled to recover in quantum meruit for the value of his services. Resolution of all the questions in the plaintiff's favor would raise the issue of his entitlement to recover the contingent fee for his services as stated in the contract.... Thus, on the record before us, we are unable to decide whether we should adopt the rule we speculated on in Salem Realty Co. v. Matera, supra, granting recovery on the contingent fee contract in some circumstances.

Provanzano argues that Opert stands for the proposition that summary judgment cannot be granted in a fee contest like this one unless all of the factors listed in Salem Realty are undisputed. Provanzano, however, ignores the obvious; the speculative rule in Salem Realty has never been adopted by the Supreme Judicial Court. While Opert envisions a possible cause of action in a circumstance where the client, acting in bad faith, discharges his attorney on the eve of a recovery to avoid paying a contingent fee, that is not what happened here. Provanzano was paid for the services he actually performed. (If, as he alleges, he performed some uncompensated work for Agency after his termination, his remedy is in quantum meruit).

■ It follows from what has been said that Provanzano's Chapter 93A claim must also fail. Rendering legal advice and representation is not engaging in trade or commerce with a client within the meaning of Chapter 93A. See Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 462–463, 681 N.E.2d 1189 (1997). While there may be circumstances in which a breach of contract is actionable under Chapter 93A, see Framingham Auto Sales, Inc. v. Workers' Credit Union, 41 Mass.App.Ct. 416, 418, 671 N.E.2d 963 (1996), "[a] client's discharge of chosen counsel is not a breach of contract but merely an exercise of this inherent right." Olsen v. City of Englewood, supra, 889 P.2d at 676.

## ORDER

For the foregoing reasons, Provanzano's motion to reconsider is DENIED. Provanzano's motion to file a supplemental affidavit

is *ALLOWED*. Agency's motion to strike the notice of recent authority is *DENIED*. Provanzano's motion to amend the Amended Complaint is *ALLOWED*. Agency's motion for summary judgment on the issue of contract damages is *ALLOWED*. Provanzano and Agency shall have twenty-one days to submit a joint proposed scheduling order to permit discovery on Provanzano's amended claim in quantum meruit.

SO ORDERED.