Greco, J.
This is an action by a discharged attorney, George C. Malonis (“Malo-nis”), against his successor counsel, Robert W. Harrington (“Harrington”), for a share of the contingent fee that counsel received after the litigation involved was settled. A review of the trial judge’s rulings on Malonis’ requests for rulings of law requires us to consider the evidence in the light most favorable to Malonis. So viewed, the evidence would have warranted the following findings:
After an automobile accident in 1991, Marc Loiselle (“Loiselle”) hired Malonis to represent him in the ensuing tort action. They agreed that Malonis would receive a one-third contingent fee, but that if Malonis was discharged prior to the conclusion of the litigation, he would be entitled to receive his reasonable expenses and disbursements, together with compensation “for the fair value of the services rendered to [Loiselle] up to the time of discharge.” After Malonis filed a complaint and completed a considerable amount of work on the case, and after an offer of $30,000.00 in settlement was made and rejected, Loiselle discharged Malo-nis without cause and hired Harrington, with whom he also made a one-third contingent fee arrangement Harrington knew that Loiselle had prior counsel when he entered the case. Although additional work done on the case by Harrington was not extensive, he did suggest that the parties engage in private mediation, after which the case was settled for $57,500.00.
After he was discharged, Malonis filed for an attorney’s lien under G.L.c. 221, §50. Aware of that action, Harrington repeatedly sought from Malonis an itemized bill for the services he had rendered to Loiselle. Because Malonis had filed for a lien and because he assumed that the question of his compensation would he addressed once the case was settled, Malonis did not furnish Harrington with such an itemization until April of 1995. In the itemization finally submitted, Malo-nis sought fees of $10,320.00 and costs of $1,035.80. At one point, when litigation in this matter was pending in the Superior Court, counsel for one of the defendants in the original lawsuit brought by Loiselle, Paul Keane (“Keane”), told Harrington, “You still have the issue to deal with on Mr. Malonis’ lien.” Harrington responded that he would “take care of Malonis. Harrington never told Malonis, however, that he was going to pay him any money. Because Loiselle’s lawsuit was settled without any “judgment, decree or other order” in his favor, the Superior Court dismissed Malonis’ efforts to enforce any lien.
When this case was tried in the Lowell District Court, Malonis sought to *150 recover from Harrington on the grounds that Harrington was unjustly enriched by failing to reimburse him for his fees and costs out of Harrington’s contingent fee; that by retaining the whole fee, Harrington had converted money belonging to Malonis; and that Harrington had committed an unfair and deceptive practice in violation of G.L.c. 93A. After trial, the judge found for defendant Harrington and awarded no damages. Malonis bases this appeal on the denial of three of his requested rulings of law. Request number 1 sought a ruling that when a client discharges his lawyer and thereafter recovers a settlement, “the discharged attorney is entitled to compensation for the fair value of his services whether or not the discharged attorney and client have entered into a contingent fee agreement.” In request number 2, Malonis sought a ruling that when there is a contingent fee agreement, “the successor attorney is liable to pay to the discharged attorney the fair and reasonable value of the discharged attorney’s services to the time of discharge from the contingent fee collected.” Finally, request number 8 sought a ruling of law that the evidence warranted a finding in favor of Malo-nis.
1. “Essential to the lawyer-client relationship is the client’s right to change his lawyer at any time - even without cause.” Smith v. Binder, 20 Mass. App. Ct. 21, 23 (1985). While the discharged attorney remains entitled to his or her fee, the obligation to pay that fee falls on the client, not successor counsel. In Salem Realty Co. v. Matera, 10 Mass. App. Ct. 571 (1980), the Appeals Court noted that the right of a client to change lawyers would not have “much value if the client is put at risk to pay the full contract price for services not rendered and to pay a second lawyer as well.” Id. at 575. Consequently, “[f]or the discharged lawyer... recovery cannot be on the contingent fee contract, but for a reasonable fee on a quantum meruit basis.” Id. at 575-576. Nowhere in Salem Realty Co. did the Appeals Court even intimate that successor counsel bore any “risk to pay.” To the contrary, the Appeals Court cited Fracasse v. Brent, 6 Cal. 3d. 784, 791 (1972), in which the Supreme Court of California noted that to “[t]he extent that such discharge is followed by retention of another lawyer, the client will in any event be required, out of any recovery, to pay the former attorney for the reasonable value of ids services. Such payment, in addition to the fee charged by the second attorney, should certainly operate as a self-limiting factor on the number of attorneys so discharged.” See also Smith v. Binder, supra wherein the Appeals Court referred only to what the client was “bound to pay.”
We recognize that on further appellate review in Salem Really, the Supreme Judicial Court declined to “formulate a rule... which would bar recovery on a contingent fee agreement in all cases by an attorney who has rendered substantial performance.” Salem Realty Co. v. Matera, 384 Mass. 803, 804 (1981). In leaving this door open, the Court clearly indicated that any such enhanced recovery would be “on the contract in contrast to the restitutional species of recovery in quantum meruit” Id. Since the only contract involved would be the one between the client and the discharged lawyer, any such recovery would have to come from the client
Our conclusion that successor counsel cannot be held liable in an action by discharged counsel for a fee is in accord with that reached in other jurisdictions in addition to California. See, for example, Styler v. Hugo, 422 Pa. Super. 262 (1993), aff’d 535 Pa. 610 (1994); Adams v. Fisher, 390 So.2d. 1248 (Fla. App. 1980); Hoddick, Reinwald, O’Connor & Marrack v. Lotsoff, 719 P.2d 1107 (Hawaii App. 1986). More generally, see the cases collected in George L. Blum, Annotation, Limitation to Quantum Meruit Recovery, Where Attorney Employed Under Contingent-Fee Contract Is Discharged Without Cause, 56 ALR 5th 1 (1998). However, Malonis’position to the contrary is not without some support In particular, he relies on Saucier v. Hayes Dairy Products, Inc., 373 So. 2d 102, 118-119 (La.1979). In that case, a *151 sharply divided Louisiana Supreme Court[2] held that where counsel was discharged and new counsel retained, “the highest agreed upon contingent fee” should he allocated between the lawyers. In the Courfs view, such a solution “should assure fair treatment of the client who will never be compelled to pay more than one reasonable fee in an amount he has agreed to pay. And it permits the client to change attorneys without acting to his financial peril, whether or not he has ‘cause’ to make the change in attorneys.” Compare also Gary E. Rosenberg, P.C. v. McCormack, 672 NYS 2d. 892 (1998); Pryor v. Merten, 490 S.E.2d. 590 (N.C.Ct. App. 1997).
We decline to follow the Louisiana approach for a number of reasons. First and foremost, as discussed above, what law there is in Massachusetts points to the client as the person to whom the discharged attorney must look for his compensation. Additionally, as it was the client who decided to change lawyers, as was his right, it is the client who should bear the costs, if any, of that decision. Successor counsel and the client were free to make their own arrangement consistent with Rule 1.5 of the Massachusetts Rules of Professional Conduct Supreme Judicial Court Rule 3:07. Inherent in any contingent fee arrangement are the possibilities that counsel will realize a large fee for a small amount of work, or a fee far less than what his efforts on the case would have commanded, or no fee at all. Finally, the discharged attorney can protect himself and can make sure that he has a seat at the table when the money is divided.[3]
2. Since Harrington was under no obligation to share any part of his fee with Malonis, the trial judge properly denied the requested rulings of law which form the basis of this appeal. As to request for ruling number 1, it is true that a discharged attorney is entitled to he compensated for the fair value of his or her services. However, since this case involved a suit by a discharged lawyer against successor counsel, and not the former client,[4] it would have been reasonable for the trial judge to construe Malonis’ request for ruling as referring to compensation from successor counsel, and to deny it on that basis. The second request for ruling was explicitly couched in terms of the liability of successor counsel, and was properly denied.
Finally, Malonis challenges the denial of his eighth request for a ruling that the “evidence warranted] a finding” in his favor. There was no error. Malonis sought to recover from Harrington on the theories that Harrington converted monies rightly belonging to him, that Harrington was unjustly enriched, and that he vio *152 lated G.L.C. 93A As to the conversion claim, since Harrington was entitled to the full benefit of his contingent fee agreement, no view of the evidence would have permitted a finding that Malonis had a right to possession of any portion of Harrington’s fee, or that Harrington wrongfully deprived Malonis of that money. See MacNeil v. Hazelton, 306 Mass. 366, 367 (1940). For similar reasons, there could be no claim for unjust enrichment, even assuming that the law would recognize such a cause of action in these circumstances. See The Community Builders, Inc. v. Indian Motorcycle Associates, Inc., 44 Mass. App. Ct. 537, 560 (1998) (“Unjust enrichment, as a basis for restitution, requires more than benefit The benefit must be unjust, a quality that turns on the reasonable expectation of the parties. [Emphasis in original]”).
Lastly, any claim under G.L.c. 93A by Malonis which was specifically based on the premises that he was the third party beneficiary of an agreement by Harrington and that Harrington unfairly breached that agreement was never put before the trial court The fact portion of Malonis’ complaint (originally filed in the Superior Court) did not refer to the alleged promise by Harrington to Attorney Keane that he, Harrington, would “take care of” Malonis. There was also no count in the complaint based on that promise. None of Malonis’ requested rulings specifically addressed the law relative to contracts for the benefit of a third party. Where Harrington’s statement was mentioned in the request for rulings and in file opening and closing statements of counsel, it was in the general context of one of the factors to be considered in determining whether Harrington violated G.L.c. 93A In these circumstances, there was nothing to alert the trial judge that he was being asked to determine whether the evidence warranted a finding that Harrington was liable on the basis of such a promise. See Poly v. Moylan, 423 Mass. 141, 149 (1996) (“an appeal is not the proper time to advance new theories of recovery.”); Shapiro v. Grinspoon, 27 Mass. App. Ct. 596, 601 (1989).
Even if the G.L.c. 93A claim is not deemed to be based solely on a contract for the benefit of a third party, “the proper party to assert a c. 93A claim against an attorney is a client or someone acting on a client’s behalf... [F]or an attorney to be liable under G.L.c. 93A outside the attorney-client relationship, he or she must have been acting in a business context” Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 462-463 (1997). The denial of Malonis’ request for ruling number 3 that the evidence warranted a finding in his favor, as it related to the G.L.c. 93A claim, was thus proper in the absence of any evidence that Harrington “had a commercial relationship” with Malonis or that he “interfered with ‘trade or commerce.’” First Enterprises, Ltd. v. Cooper, 425 Mass. 344, 347 (1997), quoting G.L.c. 93A, §11. See also Kurker v. Hill, 44 Mass. App. Ct. 184, 190-191 (1998).
The trial courts judgment for defendant Harrington is affirmed. The plaintiff’s appeal is dismissed.
So ordered.

 Indeed, when that Court first heard the case, it arrived at a different result by a four to three margin. After the membership on the Court changed, the case was reheard, resulting in the holding discussed above, again by a four to three margin.

 In this case, Malonis initially took aggressive action to secure his right to compensation. After that, however, there was a certain degree of drift. He did not respond to several requests from Harrington for an itemized hill for his services. By the time a response was received, a settlement had been reached and Loiselle had asked Attorney Keane to have the settlement checks made out to himself and Harrington. Although Keane was aware of Malonis’ concerns about compensation, he acquiesced in Loiselle’s request relying, perhaps, on Harrington’s statement that he would “take care of Malonis. We suspect that the problems that arose in this case are not common because, unlike this case, the client remains a viable source of funds, or because, again unlike this case, the attorneys involved are more solicitous of each other. Compare the Preamble to Rule 3:07, para 6 which cautions that in addition to the Rules of Professional Conduct, “a lawyer is also guided by personal conscience and the approbation of professional peers.”

 Malonis’ action against Loiselle was voluntarily dismissed.