Welch, J.
INTRODUCTION
This case asks the question: May an attorney demand that a client pay a retainer fee which the attorney will never earn? The answer is simple: No.
The defendant has moved for summary judgment as to all counts of the breach of contract action (Civil Action No. 01-1084A). The breach of contract action has been consolidated with a tort action filed by the same plaintiff against the same defendant and various of its employees or officers (Civil Action No. 01-1195B).
Count I and II of the contract action seek enforcement of the contract which the plaintiff, an attorney, drafted with his client, defendant General Electric River Works Employees Credit Union. Counts III through VIII of that complaint seek legal fees for particular legal work allegedly performed by the plaintiff. The breach of contract action concludes with Count IX alleging that the defendant violated Chapter 93A. After hearing, it is clear that summary judgment must be granted as to Counts I and II in light of the fact that the written contract drafted by Attorney Cronis, and allegedly entered into by the Credit Union, is plainly contrary to public policy and the Massachusetts Rules of Professional Responsibility. Likewise, summary judgment as to Count IX must be granted in that it is based upon the alleged breach of this unenforceable contract. Furthermore, the contract is plainly one for legal services and, as such, cannot be the basis of a Chapter 93A claim. As to the other counts (Counts III-VIII), there still exist genuine issues of material fact in dispute. Therefore, the defendant’s motion for summary judgment must be denied as to those counts.
DISCUSSION
Despite the flurry of allegations and accusations thrown by each side, the following matters are undisputed. Plaintiff Charles Cronis is a member of the Massachusetts Bar in good standing. For many years he has represented the defendant General Electric River Works Employees Credit Union in various legal dealings. In the year 2000, the defendant Credit Union directed Attorney Cronis to draw up a contract for his legal services. There is dispute as to the directions that were given to Attorney Cronis by the Credit Union. The Credit Union, for instance, insists that it instructed Attorney Cronis to provide a clause in the contract whereby, after the first year of a three-year period, the Credit Union could terminate his contract without cause. Attorney Cronis disputes this. What is clear and undisputed, however, is that the contract was drafted by Attorney Cronis. The contract is entitled “Contract for Legal Services.” It provides for a monthly retainer to be paid to Attorney Cronis for his employment as an attorney and specifies the fee amounts over a three-year period. The contract, as its title suggests, plainly is one for legal services; it provides for a lawyer to act, in essence, as the “general” counsel for the credit union. It lists various duties and services to be provided by legal counsel on the attached and incorporated “Schedule A.” These include such routine matters as attendance at board meetings, response to legal inquires, “handling negotiations enclosing for purchase of realty or personal property by the Credit Union,” the "handling” of various programs offered by the credit union (such as mortgage, refinance and home equity loan programs), review of trust documents and other legal documents, review of legislation, drafting of collection and/or demand letters, and general legal advice.
The contract for legal services was signed by Attorney Cronis as “legal counsel.” The co-chairman of the audit committee for the Credit Union, a Mr. Joseph McManus, and the President of the Credit Union (a Mr. William Johnson), signed the contract on behalf of the credit union. The contract provided for a retainer of $1,800 per month to be paid from April 15, 2000 to April 15, 2001 (the first year). In the second year, the monthly retainer payment was to be increased to $2,000 per month and, then, the third year the monthly retainer was to be $2,200 per month.
The contract contains two termination provisions. For Attorney Cronis, a provision allows legal counsel “the option to terminate” after the first year of the contract “in the event that, in his opinion, personal *518 reasons so dictate.” In other words, Attorney Cronis could terminate the contract for any reason whatsoever after performing the first year of legal services. The contract was not so favorable for his client the credit union. The termination clause relating to the credit union provides that the contract can only be terminated for “just cause.” In the event the contract is terminated for any reason “other than just cause,” Attorney Cronis would be “entitled to compensation for the unexpired term of the contract.” In other words, if after the first year of service the credit union wished to terminate the contract it would still have to pay Attorney Cronis the hefty monthly sums set forth in the contract for the next two years.
Both sides agree that the defendant attempted to terminate the contract with Attorney Cronis after approximately one year. The defendant has refused to pay the monthly retainer fees for the future two years provided for in the contract.[1]
This surprisingly one-sided contract, which was drafted by the plaintiff in his capacity as an attorney for the defendant, is plainly unenforceable. A client is always entitled to discharge his lawyer and any lawyer who is discharged is required to refund “any advanced payment of fee which has not been earned.” Massachusetts Rules of Professional Conduct, Rule 1.16. As the commentary to this rule states: “A client has right to discharge a lawyer at any time with or without cause, subject to liability for payment for the lawyers services.” Case law has expounded upon this provision: “A client’s right to change his lawyer at anytime for any cause or no cause at all is inherent in the characteristics of trust and confidentiality in the lawyer/client relationship.” Salem Realty Co. v. Matera, 10 Mass.App. 571, 575 (1980) (see also cases cited therein). Thus, Attorney Cronis’ attempt to insert the “just cause” provision into the contract, whereby he could not be discharged by his client except for “just cause,” is plainly contrary to his professional responsibilities and, hence, contrary to public policy.
Even more troubling is that the contract, in essence, contains a one-sided penalty clause. Under the contract, legal counsel would be entitled to all the compensation “for the unexpired term of the contract” if he was discharged for any reason other than “just cause.” For example, if the client wished to discharge Attorney Cronis after the first year of the legal services contract, it would be required to pay Attorney Cronis for over $50,000 for legal services that Attorney Cronis never performed. It is difficult to see how this not an “illegal or clearly excessive fee.” Massachusetts Rules of Professional Conduct, Rule 1.5(a). In addition, such a penalty clause effectively discourages a client from its free choice of counsel. As previously mentioned, a client always has the right to change lawyers for any reason whatsoever. “But the right of a client so to do has not much value if the client is put at risk to pay the full contract price for services not rendered and to pay a second lawyer as well." Salem Realty Co. v. Matera, supra at 575. The applicable rules of professional conduct and the amplifying case law were well established long before Attorney Cronis drafted the contract for legal services. The contract plainly is against public policy and, thus, cannot be enforced as a matter of law. Summary judgment must enter as to Counts I and II.
Because the contract is unenforceable due to it being in violation of public policy, the breach of such of contract cannot conceivably provide a basis for a Chapter 93A claim. Even assuming that the contract for legal services was valid and enforceable, it would not provide a basis for Chapter 93A liability. The contract provided for services by an attorney to a business client. In order for Chapter 93A to be applicable, the attorney must be acting “outside the attorney/client relationship” and in a “business context.” Tetrault v. Mahoney, Hawks & Goldings, 425 Mass. 456, 463 (1997). In the present case, the contract is plainly one for legal services and did not involve any type of extra-legal business transaction between the credit union and Attorney Cronis. Thus, the credit union was not “engaged in trade or commerce” with the attorney. Id. at 463.
CONCLUSION
At oral argument, plaintiffs counsel argued that the court should treat Attorney Cronis “like anyone else” and enforce the contract as one would with any two sophisticated persons entering into a three-year contract. An attorney, however, particularly when dealing with his own client, does not stand in the same shoes “as anyone else.” When an attorney negotiates a legal services contract with his or her client, he is not merely a hardened business sort looking out only for one’s own financial self-interest. All of us who become members of the bar should remember that we are not equivalent to some professional football coach or sports figure who negotiates a three-year employment contract and is entitled to the full contract amount even if he gets fired after one lackluster season. Unlike the football coach or some executive negotiating a “golden parachute,” an attorney cannot demand some sort of financial windfall in the event that he is discharged. Instead, an attorney has the honor and responsibility of standing in a position of trust with the client and can only demand a reasonable fee for the services that he actually performs. This does not prevent an attorney from negotiating a reasonable retainer fee but the client is always entitled to discharge the lawyer and not pay the retainer amounts not already earned. Therefore, summary judgment must enter as to Counts I, II and IX of the complaint. As previously stated, genuine issues of material fact are still in dispute as to the remaining counts and the motion for summary judgment is denied as to those counts.

 The defendant claims that it had just cause to terminate *519 Attorney Cronis. The plaintiff contests this matter. This does appear to be issue of disputed fact that cannot be resolved at this time. That, however, is unimportant in that the contract itself is plainly unenforceable.