Louis Aurelio, Jr., & another *vs.* Elvet E. Laird.

Suffolk.  January 4, 1967. — February 6, 1967.

Present: Wilkins, C.J., Spalding, Whittemore, Kirk, & Spiegel, JJ.

*Negligence,* Doctor.  *Evidence,* Hypothetical question.

At the trial of an action of tort against a doctor for alleged malpractice in failing to treat properly a small puncture of undetermined origin surrounded by a "small red" swollen area which he observed one morning on the skin of a four days old baby under his care and which had pus in it that evening and became much worse within a few days, the plaintiff's hypothetical questions to a qualified pediatrician, who gave his opinion as to good medical treatment for the condition of the area that evening, properly did not include statements that the defendant then knew there was pus in the puncture or as to the cause of the puncture.  [4]

At the trial of an action of tort against a doctor for alleged malpractice in failing to treat properly a small puncture of undetermined origin on the skin of a baby, on the evidence the judge's instructions properly did not include rulings that no recovery could be had by reason of the fact, if found, that proper treatment by the doctor at the proper time would have caused a quicker cure, or that there was no evidence that his negligence was the proximate cause of an infection which developed from the puncture.  [5]

At the trial of an action of tort against a doctor for alleged malpractice in failing to treat promptly and properly a small puncture of undetermined origin surrounded by a "small red" swollen area on the skin of a four days old baby under his care, which he observed in a hospital shortly before the discharge of the baby therefrom to his home, a finding that the defendant was negligent was warranted by evidence that about a week later the baby was critically ill from a "hospital type

staphylococcus" infection which had developed in the area of the punc-
ture and that until then the defendant had taken no steps with respect
to infection in such area although in the interval the baby's mother by
telephone had described to the defendant obvious signs of serious in-
fection observed by her, together with the defendant's own testimony as
to the risk and likelihood of staphylococcus infection in open wounds in
hospitals and that redness and swelling about a wound indicated that
infection might develop, and his further testimony and expert testimony
as to the importance of early treatment.   [5]

Tort.   Writ in the Superior Court dated February 9,
1962.

The action was tried before *Rose, J.*

*Alan M. Winsor* for the defendant.

*Bernard A. Dwork* for the plaintiff.

Whittemore, J.   There was no error in the trial of this
action for malpractice in respect of the care and treatment
of an infected small puncture of the skin of the right hip of
the minor plaintiff (Louis, Jr.).   The case was tried with a
case against the hospital in which the wound was suffered.
There were verdicts against each defendant.

On the evidence, the jury could have found as follows:
Louis, Jr., born in the hospital on October 6, 1960, was
under the care of the defendant, the delivering obstetrician,
until the mother and baby left the hospital on October 11,
1960, and thereafter.   On October 10 the defendant, on
examining the baby and the mother for discharge from the
hospital, observed a small red swollen area on Louis, Jr.'s,
right hip.   He told the mother it appeared to be a pinprick
and that she should change the gauze pad that was then on
the spot.   He recorded the "small red area" on a page in
the hospital records under "condition on discharge" and
signed the page.   A nurse's memorandum, made at 6 P.M.
on October 10 on a sheet of "bedside notes," recorded that
the "Baby had small red area on Rt hip — opening about
pin point size   small amt. of blood & pus oozing — Seen by
Dr. Laird — Baby discharged c̄ [with] mother — in other
wise good condition."   This note was not made by the
nurse who at 10 A.M on the same sheet recorded "Small
swollen area on Rt. Hip   no pustules reported."   There

was no direct testimony that the defendant saw Louis, Jr., after 10 A.M. on October 10. He testified that he did not. He did not sign the page of "bedside notes." Although the 6 P.M. entry may mean only that Dr. Laird had seen the swelling in the morning, it is also subject to the construction that the precise condition recorded in that entry was seen by the defendant.

After the mother got home she observed that the area was red and swollen and "there was a lot of pus in it with blood draining from it." She called the defendant on the second or third day after leaving the hospital and described the condition. He told her to use warm gauze pads "and that was all." She spoke with him again about a day later and he told her the same thing and declined her request to see the baby. On October 17, in response to another telephone call from the mother, he told her to bring the baby in at 3 P.M. The baby's rear was then red and black and blue and swollen; the defendant said he had never seen anything like it in his twenty years of practice and to bring the baby in the next day for the pediatrician to see him. The defendant then observed a red streak "going up two or three inches to about the belt line." On October 18, a pediatrician to whom the mother was referred by the defendant sent Louis, Jr., to the Beth Israel Hospital. When admitted at that hospital Louis, Jr., was suffering from a staphylococcus aureus infection, a "hospital type staphylococcus," and was critically ill with disseminated cellulitis.

The defendant testified that inflammation (redness and swelling) is not necessarily an infection, but may become an infection; pus such as was noted in the 6 P.M. entry would indicate infection; staphylococcus infection was a hospital problem; open wounds were a common source of such infection; after he saw the swollen area he did not examine Louis, Jr., to ascertain if he had a staphylococcus infection; there are methods of doing this; if "there was a pinpoint size wound which was infected, then the safest course would be to assume that there was a staphylococcus aureus condition in the wound and to treat it as such by using penicillin

or chloromycetin or one of the antibiotics.'' He did not at the hospital prescribe any medication nor ask the mother to bring the baby back. On October 17 ''it was . . . safe for him to assume that there was a staphylococcus aureus type infection.'' He then knew that early treatment was most important, that the sooner the child was treated the better and that it probably would have been better if the child had been treated on October 17 rather than on October 18. There was a pediatrician available for him to call on October 17. If Louis, Jr., had been put on penicillin or chloromycetin a day earlier the condition would have been easier to cure. Half the population have ''these foreign staph bodies'' on their bodies somewhere and in order for them to get into the blood stream there must be a break in the skin.

A qualified pediatrician testified that it was most likely that the original redness noted on October 10 was the original site of the infection that produced the condition found on October 18. Good and prudent medical practice in the Boston area for the condition observed at 6 P.M. would have been to obtain a culture and either begin antibiotic treatment immediately or await the result of the culture examination. He also was of the opinion with reasonable medical certainty that if this procedure had been followed ''it most likely would have'' precluded the disseminated cellulitis which later developed.

The defendant's objections to the hypothetical questions to the pediatrician are unfounded. The cause of the pinprick had nothing to do with the defendant's liability and the questions properly did not include anything about the cause. Nor did any of the questions need to include the statement that the defendant knew on October 10 at 6 P.M. that there was pus in the wound. Evidence of good medical practice for the treatment of the condition that had developed by 6 P.M. on October 10, and had greatly increased in seriousness when the mother called the defendant two or three days after the discharge, was relevant even if the defendant did not have specific knowledge of the condition until that call.

There was no error in the instructions. The judge could not rightly have ruled that no damages might be awarded by reason of the fact, if found, that proper treatment by the defendant at the proper time would have caused a quicker cure. *Marangian* v. *Apelian,* 286 Mass. 429, 436. See *Wright* v. *Clement,* 287 Mass. 175, 176. Plainly also the judge should not have instructed that there was no evidence that the defendant's negligence was the proximate cause of the infection. The case, as noted, was concerned with the defendant's lack of care in treating a wound of undetermined origin. There being a basis for a finding against the defendant, there is nothing in the assertion, based on the contrary assumption, that the judge should not have instructed that the plaintiff was entitled to the same amount against each defendant if both were found negligent regardless of the relative negligence of each.

Little more need be noted to show that there was no error in denying the defendant's motion for a directed verdict. *Pasquale* v. *Chandler,* 350 Mass. 450, 458–459. Even were we to assume that the defendant had not been shown to have knowledge of the appearance of pus by 6 P.M. on October 10, 1960, there was a case for the jury. The defendant's own testimony as to the risk and likelihood of staphylococcus infection from open wounds in hospitals and that redness and swelling about a wound indicates that infection may develop, with his testimony and the expert testimony as to the importance of early treatment, warranted a finding that the defendant should have checked whether infection was developing. The jury could have found that he should have arranged to be notified immediately if any pus appeared. At the latest, action by him was required when the mother, two or three days after she had returned home, reported the obvious signs of serious infection then observed by her.

*Exceptions overruled.*