JOSEPH C. DUGGAN vs. CITY OF TAUNTON & others[1]
(and a companion case[2]).

Bristol. September 17, 1971. — December 16, 1971.

Present: TAURO, C.J., CUTTER, REARDON, & BRAUCHER, JJ.

Attorney at Law. Contract, With attorney at law, Validity. Municipal
Corporations, Officers and agents, Contracts. Public Policy.

A contract between an attorney and a municipal light plant commission
for essentially all legal services over a period of three years, voted by a
majority of the commission at a time when enlargement of the
commission was imminent, was against public policy and unen-
forceable. [648-652]

TWO ACTIONS OF CONTRACT.   Writs in the Superior Court
dated April 4, 1966.

The actions were tried before Taveira, J.

Edward A. Roster for Taunton Municipal Light Plant
Commission (Francis M. O'Boy, City Solicitor, for the
City of Taunton, with him).

Joseph C. Duggan (Frank V. Phillipe with him) for the
plaintiffs.

CUTTER, J.   Mr. Duggan and Mr. Phillipe (fn. 2), each
an attorney, brought separate actions of contract against
the city and Taunton Municipal Light Plant Commission
(commission) and others (fn. 1) to recover amounts allegedly
owed them for legal services to the commission under written
contracts, each dated December 14, 1965, in the form
described in the margin.[3]   A demurrer to each declaration

---

[1] Taunton Municipal Light Plant and its five commissioners and manager.

[2] Frank V. Phillipe vs. City of Taunton, and others (see fn. 1).

[3] Mr. Duggan's contract provided for an annual salary of $8,500, payable
monthly, and was to be in effect for three years (January 1, 1966, to Decem-

by the commission and its members and manager was over-ruled subject to the commission's exceptions. At trial, a stipulation of certain facts was filed. These facts we summarize below. Certain evidence about matters not covered by the stipulation also was introduced (see e.g. fn. 5, *infra*).

The manager of the commission's plant has statutory powers, which include the employment of attorneys.[4] Mr. Duggan and Mr. Phillipe, without written contracts, had served as counsel for the commission, respectively, from December 6, 1962, and from May 19, 1964.

At the commission's regular meeting on November 2, 1965, all three commissioners voted to have Messrs. Duggan and Phillipe "draw up an agreement . . . with compensa-

---

ber 31, 1968). The second paragraph reads (in part): "[T]he said first party [Plant] hereby retains and employs, pursuant to the authority conferred upon it and its Manager . . . [see G. L. c. 164, § 56], said second party [Mr. Duggan] to act, under the title of general counsel, as attorney for . . . [Plant] and to render to it and said Manager all legal advice and to represent it and said Manager in all matters which may be pending or which may hereafter be instituted in any of the courts of the Commonwealth . . . the Courts of the United States . . . within said Commonwealth, and before all administrative agencies and departments of government brought by or against . . . [Plant], during and throughout the continuance of this agreement; and to examine all abstracts of title, prepare all contracts, undertake all collections as requested, to render legal opinions and all other legal services as . . . first party or any of its commissioners and officers, acting officially, may request or require." Mr. Duggan accepted the "employment and retainer . . . with the full understanding that the relationship of attorney and client shall exist in all particulars between" Plant and himself. Mr. Phillipe's contract was essentially the same in form, except that he was described as "associate general counsel" and was to receive an annual salary of $3,500.

[4] See G. L. c. 164, § 56 (as amended through St. 1958, c. 160) which reads in part: "The mayor of a city . . . acquiring a[n] . . . electric plant shall appoint a manager of municipal lighting who shall, under the direction and control of the mayor . . . and subject to this chapter, have full charge of the operation and management of the plant, the manufacture and distribution of . . . electricity . . . [and] the employment of attorneys and of agents and servants . . . ." By Spec. St. 1919, c. 150, § 1, the powers of the mayor were transferred to the commission. See *Municipal Light Commn. of Taunton* v. *Taunton*, 323 Mass. 79, 84; *Commonwealth* v. *Oliver*, 342 Mass. 82, 83–85; *Municipal Light Commn. of Taunton* v. *State Employees' Group Ins. Commn.* 344 Mass. 533, 534–535. Originally the commission was to consist of three members appointed by the mayor. By St. 1965, c. 289, § 1 (approved April 7, 1965), the membership was to be increased to five on January 1, 1966 (§ 3), subject to the acceptance of that statute at the 1965 municipal election in Taunton.

tion and lengths of agreements." This was done by the two attorneys (see fn. 3). In the record of the commission's meeting on December 14, 1965, the following entry appeared, "Legal contracts for retaining Attorneys Duggan and Phillipe were submitted to the [c]ommission. In order to protect the taxpayers, Mr. Farrell made a motion, seconded by Mr. Guglielmo to retain both attorneys for a period of three years. Mr. Phillipe to be paid $3,500.00 per year; Mr. Duggan to be paid $8,500.00 per year. Mr. Quinn no. Motion carried." The motion thus carried by two votes to one.

The commission then consisted of three members. After January 1, 1966, as a consequence of St. 1965, c. 289 (see fn. 4, last sentence), the mayor appointed two additional commission members. There was thus reasonable basis[5] for the suspicion that two of the three commission members, in December of 1965, were anxious to make contracts for legal services which would bind the five-man board of commissioners to be in office in 1966. The two contracts were in fact executed on December 14, 1965, and Messrs. Duggan and Phillipe continued to serve as counsel and associate counsel.

On February 1, 1966, Messrs. Duggan and Phillipe were asked to appear before the newly constituted five-member commission in executive session. They were requested to

---

[5] There was evidence "that Commissioners Farrell and Guglielmo developed confidence and trust in Mr. Duggan's legal abilities during the years that he served as plant counsel. When . . . [they] learned that the constituency of the . . . [c]ommission was to be increased . . . they became concerned that Attorneys Duggan and Phillipe might not be able to complete several significant cases they were then handling for the commission. As a result, they instructed the manager to discuss with the plaintiffs suitable written contracts. . . . On December 2, 1965, an informal commission meeting was held at which Attorney Duggan, Manager Graban, [and] Commissioners Farrell and Guglielmo were present. At this meeting the proposed attorneys' contract was discussed." Commissioner Quinn was not present. He voted against the contracts on December 14, 1965, and to discharge the two attorneys on February 1, 1966. "There was evidence that there was an antagonistic attitude between . . . [Mr.] Duggan and . . . Quinn," and that Quinn did not share Farrell's and Guglielmo's relationship with Mr. Duggan. There was also testimony (a) that Mr. Duggan advised one of the commissioners a three year contract "term was legal," and (b) that the two attorneys would be able to finish their pending matters under the proposed contracts.

resign and refused to do so. By a three to two vote, Messrs. Duggan and Phillipe were discharged as attorneys. A bill ($741.77) from Mr. Duggan for services rendered in January, 1966,[6] and one ($291.67) from Mr. Phillipe for the same month were paid. On February 7, 1966, a new attorney was appointed pursuant to a vote of the commission.

At trial, the judge submitted to the jury one question: "Concerning the Contracts in controversy, did the plaintiffs by conduct, or in any of the discussions or preliminary negotiations, or by advice to the Manager or Commissioners of the Taunton Municipal Lighting Plant, or in their preparation or drafting of the Contracts, substantially influence the action taken by the Commissioners in executing the Contracts?" This question was answered in the negative. The judge thereupon allowed motions for directed verdicts for the amount of their contracts, filed by Messrs. Duggan and Phillipe.

We have before us exceptions to the overruling of the demurrers, on certain evidential matters, to the judge's refusal to put certain questions to the jury, and to his failure to give certain instructions. We also must consider exceptions to the denial of the commission's motions for directed verdicts and to the judge's action in directing verdicts for the plaintiffs.

1. We deal first with the exception to the judge's action in directing verdicts for the plaintiffs. This, as has been noted, was done after the jury answered in the negative the question put to them whether the plaintiffs did "substantially influence the . . . [c]ommissioners in executing the [c]ontracts" (see fn. 3, supra).

The question seems to have been framed in the light of the so called "conflict of interest" act, G. L. c. 268A, § 19 (inserted by St. 1962, c. 779, § 1, as amended through St. 1965, c. 395), § 21 (a) and § 23 (d). We need not decide

---

[6] Mr. Duggan's bill for services from November 16, 1965, to December 28, 1965, included an item as follows: "Informal [c]ommission meeting (12-2-65) — conference with [c]ommission [m]embers on attorneys' contracts, research and preparation of contracts —." This bill was paid on December 28, 1965.

(a) whether the jury's answer to the question did in fact eliminate any question under c. 268A, or (b) whether the two attorneys (serving in an "employment," in a municipal agency, under a "contract of hire or engagement" on a "part-time . . . basis") come within the term "municipal employee" as defined in c. 268A, § 1 (g), as amended through St. 1966, c. 734, § 2. We think that facts or questions of fact affecting the legality and propriety of the contracts existed, entirely apart from c. 268A, which at least precluded directing verdicts for the plaintiffs who had the burden of persuasion. See *Companion* v. *Colombo*, 338 Mass. 620, 623; *Ellingsgard* v. *Silver*, 352 Mass. 34, 39.[7]

2. Substantial reasons exist for questioning any recovery by these plaintiffs beyond the value of the work in fact done by them. These grounds were not adequately argued or discussed in the original briefs. Accordingly, we requested supplemental briefs on the issue.

The contracts before us were made by a municipal body and involved the employment of attorneys. The employment was not limited to particular legal tasks but extended (fn. 3) to "all legal advice" and to representation "in all matters which may be pending or which may hereafter be instituted in" specified courts or before administrative bodies.[8] The contracts appear to have been made pursuant

---

[7] We do not rely upon the commission's first contention, citing *Philbrook* v. *Morey*, 191 Mass. 33, 37, that there is a general Massachusetts rule, similar to that stated in *Tenney* v. *Berger*, 93 N. Y. 524, 529, where it was said (as to situations there mentioned) that a client may discharge an attorney at any time without cause and pay only for services theretofore rendered. The *Philbrook* case seems to us to lay down no general rule denying recovery for breach of a valid and sufficiently specific contract between an attorney and a client. See *Gilman* v. *Lamson Co.* 234 Fed. 507, 510 (1st Cir. — power to discharge, in the circumstances, not to be based upon "taste" but on "cause"). Cf. *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151, 157; *Elbaum* v. *Sullivan*, 344 Mass. 662, 666–667. Doubtless, courts will scrutinize carefully agreements for legal services. See *Boston Bar Assn.* v. *Hale*, 197 Mass. 423, 437. See also *Walsh* v. *O'Neill*, 350 Mass. 586, 590; *McInerney* v. *Massasoit Greyhound Assn. Inc.* 359 Mass. 339, 351–353. In the view we take of the case, we need not deal with these decisions in greater detail.

[8] The contracts named a specific rate of compensation. No question about the propriety of the amount is now presented. Cf. discussion in *Abrams* v. *Loew*, 335 Mass. 96, 98–100.

to a majority vote of the three-man commission in December, 1965, at a time when its members must have known that a five-man commission (possibly with different views concerning counsel) would come into existence within a month or two. There is in the record evidence which would permit, and perhaps require, the finder of the facts to conclude that two members of the old commission were deliberately forcing the augmented five-man commission to allow Messrs. Duggan and Phillipe (a) to finish at least their then pending cases and (b) to furnish *all* legal advice and services to the commission until December 31, 1968 (fn. 3).

A general principle, applicable to municipal corporations and their agencies, is that, under the "common law apart from statute . . . a public officer cannot give an appointee a tenure of office beyond his own." See *Opinion of the Justices,* 275 Mass. 575, 579, and cases cited; *Howard* v. *State Bd. of Retirement,* 325 Mass. 211, 212–213; *Cieri* v. *Commissioner of Ins.* 343 Mass. 181, 184; Rhyne, Municipal Law, § 8–10, p. 142; McQuillin, Municipal Corporations (1966 rev.) §§ 29.11, 29.101. See also *Commonwealth* v. *Higgins,* 4 Gray, 34, 35; *Regan* v. *Commissioner of Ins.* 343 Mass. 202, 206.[9] Cf. Rep. A. G., Pub. Doc. No. 12 (1963) 120.

The principle has special application to the employment of attorneys. Public policy requires assuring municipal bodies that they, as well as other clients, as persons "in need of legal help," shall have freedom to select an attorney [and] to change attorneys." See *Walsh* v. *O'Neill,* 350 Mass. 586, 590. Between a municipal body or board and its legal advisers, it is desirable that there be a relationship of trust and confidence. Except where a valid contract, a clearly

---

[9] Other cases, involving somewhat analogous situations, rest on varying constitutional or statutory provisions. See *Opinion of the Justices,* 239 Mass. 603, 605–606; *Dickinson* v. *Mayor & Aldermen & Bd. of Fire Commrs. of Jersey City,* 68 N. J. L. 99, 102. Cf. *Kaplan* v. *Sullivan,* 290 Mass. 67, 70–71; *Adie* v. *Mayor of Holyoke,* 303 Mass. 295, 300. Cf. also *Perkins* v. *Selectmen of Framingham,* 313 Mass. 322, 323; *Bryson* v. *Mayor of Waltham,* 329 Mass. 524, 525. As to employment of counsel, see *O'Reilly* v. *Scituate,* 328 Mass. 154, 155.

Duggan v. Taunton.

expressed statutory policy, or some special exigency requires a different result, we should be slow to permit a "lame duck" municipal body to dictate to its successors the choice of the attorneys who are to advise them.

No precisely applicable Massachusetts decision governs this case. We rely on the trend of authorities outside Massachusetts. Contracts made with attorneys in good faith by one board to handle (during a period extending beyond the board's term in office) a particular piece of litigation or other legal matter are much more likely to be sustained against attack (on grounds of public policy) by a successor board than arrangements for a more general representation. See *Pima County* v. *Grossetta*, 54 Ariz. 530, 538; *Denio* v. *Huntington Beach*, 22 Cal. 2d 580, 590–591 (contract appearing to be "fair, just, and reasonable" when executed, not voidable although some executory features may extend beyond the terms of the municipal body executing the contract) ; *Douglas* v. *Dunedin* 202 So. 2d 787, 789 (Fla. Dist. Ct. of App.). With respect to more general retainers, however, the rule is different and appears to us to be more appropriate in the public interest. See *Willett & Willett* v. *Calhoun County*, 217 Ala. 687, 688 ("Tying the hands of the succeeding board" in the selection of a confidential legal adviser "contrary to public policy"); *Commissioners of Jay County* v. *Taylor*, 123 Ind. 148, 152–153; *McCormick* v. *Hanover Township*, 246 Pa. 169, 173–178 (but cf. *Light* v. *Lebanon County*, 292 Pa. 494, 497–500, where a contract was made at the beginning of a board's term, was unlikely to last beyond the term, and was justified by special circumstances). See also *Commissioners of Hancock County* v. *Hinchman*, 77 Ind. App. 460, 463–465; *Parent* v. *Woonsocket Housing Authy.* 87 R. I. 444, 447–450; annotations, · 70 A. L. R. 794, 799–802; 149 A. L. R. 336, 342–343. Compare cases where a contract for services or supplies (extending beyond the term of the appointing body) was reasonable, was made in good faith, and was for the public benefit, such as *Rockhill Iron & Coal Co.* v. *Taunton*, 273 Fed. 96, 100 (1st Cir. — purchase, in good faith, of coal by the manager

of this Taunton municipal light plant, covering a year and a half beyond the term of his office, held to be a valid contract). See also *Gray* v. *Joseph J. Brunetti Constr. Co. Inc.* 266 F. 2d 809, 818–819 (3d Cir. — application of New Jersey law to a contingent fee agreement with an attorney); annotation, 43 A. L. R. 2d 677, 679–683.[10]

We are not disposed to lay down any inflexible rule about contracts for attorneys' services made by municipal or other public boards for periods extending beyond the period when the board making the contract can control the actions of the board. Some such contracts made, pursuant to specific statutory or other authority, or made in good faith for particular and necessary services at an appropriate time and for reasonable compensation, may involve no substantial question of public policy and should be enforced. On the other hand, grounds of public policy may invalidate a contract for legal services made for an unduly long period, or to commence or to be in effect at a date unreasonably after the contracting body will cease to control the choice of counsel (see e.g. *Pashman* v. *Director of Pub. Safety of Passaic,* 1 N. J. Super. 616, 620), or in circumstances which indicate either an unconscionable effort to bind a successor board or officers or lack of good faith. Much will depend upon the particular facts and circumstances. We conclude that this record squarely presents the issue whether these contracts were against public policy and should be denied enforcement on that ground.

---

[10] The plaintiffs argue (a) that the commission is engaged in exercising business or proprietary powers of Taunton, rather than the city's governmental powers, (b) that different public policy considerations apply to contracts made pursuant to a municipality's business or proprietary powers, and (c) that ordinary rules of contract law (enforcing arrangements extending beyond the term of the officials making such arrangements) should apply to such contracts. See McQuillin, Municipal Corporations (1966 rev.) § 29.101, p. 492. This principle may have force with respect to ordinary business, commercial, supply, or service contracts. See *Rockhill Iron & Coal Co.* v. *Taunton,* 273 Fed. 96, 100 (1st Cir.); *Illinois Power & Light Corp.* v. *Centralia,* 11 F. Supp. 874, 885 (E.D. Ill.). Nevertheless, in view of the circumstance that a municipal plant is operated "in certain respects as a municipal department" (see *Municipal Light Commn. of Peabody* v. *Peabody,* 348 Mass. 266, 267–268), we are unwilling to apply this distinction to validate unduly long contracts retaining attorneys for somewhat general legal services, where a relationship of mutual trust and confidence should exist between the attorneys and the public officers who in fact are to be served.

Verdicts could not properly be directed for the plaintiffs despite the jury's answer to the question directed to the issue presented under G. L. c. 268A. Indeed, here the record makes it plain that the contract in terms was for essentially all legal services to be rendered to the commission and was to extend for about three years after the date when the three-man commission would have been superseded by an expanded five-member commission. No justification for this effort to bind the successor commission appears. We think that, on this record, a verdict should have been directed for the commission on the basis of what seem to us the better reasoned authorities already cited.

*Exceptions sustained.*
*Judgments for the*
*defendants.*