JOHN F. WHITE vs. BOARD OF SELECTMEN OF HOLBROOK & another.[1]
No. 88-P-565. April 28, 1989. *Municipal Corporations*, Contracts, Police.
*Contract*, Validity. *Public Policy*.

On April 2, 1987, the three members of the board of selectmen of
Holbrook, purporting to act pursuant to G. L. c. 41, § 97A,[2] reappointed
the plaintiff to the position of chief of police for the period commencing
on January 1, 1988, and ending on December 31, 1990. The plaintiff was
sworn in that day and executed a contract of employment (about which
more will be said later). The plaintiff's three-year appointment was made
by the selectmen notwithstanding the following facts: (1) two members of
the board were to be replaced at the annual town election which was to be
held four days later on April 6, 1987; (2) at the same election the voters
of the town were to consider whether the position of chief of police would
be made subject to G. L. c. 31, the civil service law; and (3) the plaintiff
had nine months remaining on his existing three-year appointment under
G. L. c. 41, § 97A. At the April 6th election, the voters made the position
of chief of police subject to the civil service law. Had the selectmen not
reappointed the plaintiff, the matter of his continued service as chief of
police would have been governed as of January 1, 1988, by the provisions
of the civil service law.

The new board of selectmen refused to acknowledge the plaintiff's con-
tract. This lawsuit resulted, in which the plaintiff sought a declaration of
his rights. Based on the facts outlined above (which were agreed upon), a
judge of the Superior Court declared the plaintiff's reappointment and

---

[1] Town of Holbrook.

[2] This statute, as amended by St. 1975, c. 336, provides as follows:

> "In any town which accepts this section there shall be a police department
> established by the selectmen, and such department shall be under the super-
> vision of an officer to be known as the chief of police. The selectmen of any
> such town shall appoint a chief of police and such other officers as they deem
> necessary, and fix their compensation, not exceeding, in the aggregate, the
> annual appropriation therefor. In any such town in which such appointments
> are not subject to chapter thirty-one, they shall be made annually or for a
> term of years not exceeding three years, as the selectmen shall determine,
> and the selectmen may remove such chief or other officers for cause at any
> time after a hearing. The chief of police in any such town shall from time to
> time make suitable regulations governing the police department, and the
> officers thereof, subject to the approval of the selectmen; provided, that such
> regulations shall become effective without such approval upon the failure of
> the selectmen to take action thereon within thirty days after they have been
> submitted to them by the chief of police. The chief of police in any such
> town shall be in immediate control of all town property used by the department,
> and of the police officers, whom he shall assign to their respective duties and
> who shall obey his orders. Section ninety-seven shall not apply in any town
> which accepts the provisions of this section. Acceptance of the provisions of
> this section shall be by a vote at an annual town meeting."

the supporting contract invalid, concluding that they violated G. L. c. 41, § 97A, and public policy. An appropriate declaratory judgment was entered. The plaintiff has appealed. We affirm.

The general principles concerning the validity of contracts made by lame-duck municipal boards were set forth in *Duggan* v. *Taunton*, 360 Mass. 644 (1971). In *Duggan*, a three-year contract for legal services between an attorney and the city's municipal light plant commission was held unenforceable because the contract was made at a time when the commission was about to be increased from three to five members and no justification was given for extending the contract for an additional three years. In concluding that the contract should not be enforced, the court in *Duggan* refused to lay down "any inflexible rule about contracts . . . made by municipal or other public boards for periods extending beyond the period when the board making the contract can control the actions of the board." *Id.* at 651. It was recognized that "[s]ome such contracts made pursuant to specific statutory or other authority, or made in good faith for particular and necessary services at an appropriate time . . . may involve no substantial question of public policy and should be enforced." *Ibid.* The court also stated that the dictates of public policy could require invalidation of municipal contracts "made for an unduly long period, or to commence or to be in effect at a date unreasonably after the contracting body will cease [to exist] . . . or in circumstances which indicate either an unconscionable effort to bind a successor board or officer or lack of good faith. Much will depend upon the particular facts and circumstances." *Ibid.*

The plaintiff, focusing on the language in *Duggan* about the possible validity of contracts made pursuant to specific statutory authority, argues that his appointment and contract were made pursuant to, and in conformity with, G. L. c. 41, § 97A, and, as a consequence, are valid and enforceable. However, we believe that § 97A leaves room for scrutiny of an individual appointment purportedly made thereunder for the appointment's compliance with public policy. This is particularly so where the appointment is discretionary in nature, cf. *Labor Relations Commn.* v. *Selectmen of Dracut,* 374 Mass. 619, 626 (1978), and it is alleged that the members of an elected board, because their term of service is about to end, may be disposed toward favoritism or indiscretion.

Here, the plaintiff's appointment and contract were made four days before a board containing two new members was to be elected. Because the appointment was made with nine months left on the plaintiff's existing contract, it accelerated an appointment which in the ordinary course would have come up for consideration in the term of the new board. No justification for the plaintiff's precipitant reappointment appears in the record. This consideration is of significance. See *Duggan* v. *Taunton, supra* at 652; *Cowin* v. *Brookline,* 4 Mass. App. Ct. 838, 839 (1976). Moreover, the contract furnished the plaintiff contains provisions which purport to eliminate the application of the civil service law to the position during the three-year

term of the appointment. These provisions were apparently designed to prevent the incoming board of selectmen from effectuating any vote by the town that the position of police chief be subject to civil service and, particularly, to circumvent the provision of G. L. c. 31, § 56, which committed to the successor board the unfettered discretion to retain or terminate the plaintiff if he failed the mandatory civil service qualifying examination. We agree with the judge that the appointment and contract were against public policy and that they should be denied enforcement on that ground. Courts in other jurisdictions, on analogous facts, have reached similar conclusions. See *City of Hazel Park* v. *Potter*, 169 Mich. App. 714 (1988); *Falls Township* v. *McManamon*, 113 Pa. Commnw. 504 (1988). In reaching our decision, we limit the case to its facts and intimate no view on other cases where an appointment may have to be made by a lame-duck board because of a legitimate vacancy in an office.

*Judgment affirmed.*

*Gerald M. Kirby* for the plaintiff.
*John Foskett* for the defendants.


