Garsh, J.
The plaintiff, City of Fall River (“City”), brought this action against the defendant, Fall River Affordable Housing Corporation (“FRAHC"), for breach of contract, conversion, money had and received, and unjust enrichment.[1] FRAHC counterclaimed for breach of contract and violation of General Laws c. 93A, §11. This matter is before the court on cross motions for summary judgment. For the reasons discussed below, FRAHC’s Motion for Summary Judgment on Liability as to Count I of its counterclaim is ALLOWED, and the City’s Cross Motion for Summary Judgment is DENIED. .
BACKGROUND
The following facts are undisputed.
The City, through one of its departments, the Community Development Agency, administers funds received as grants from the United States Department of Housing and Urban Development (“HUD”) under the federal Housing and Community Development Act of 1974, as amended, 42 U.S.C. §5301 et seq. These funds are awarded annually by HUD under the federal Community Development Block Grant Program, 24 C.F.R. §570. Under the program, the City may use the funds for certain eligible activities, including the development of low and moderate income housing.
FRAHC is a privately run, non-profit corporation. The City and FRAHC entered into a written contract on June 29, 1989, under which FRAHC was to administer certain programs for the City designed to increase and improve housing for individuals and families with low and moderate incomes. The contract provided that the City would fund those programs annually from its Community Development Block Grant. The contract was drafted by the City.
As originally executed, the contract contained, in part, the following provisions:
II. Time of Performance
The Services of the Operating Agency [FRAHC] are to commence upon receipt of a Notice to Proceed from the Community Development Agency after the execution of this Agreement and shall be undertaken and completed in accordance with the Work Program to assure expeditious completion in light of the purposes of this Agreement, but, in any event, all of the services required hereunder shall be completed by June 30, 1992.
However, this agreement shall renew automatically from year to year thereafter unless terminated for cause or for convenience as herein provided in Paragraphs XIV and XV. This agreement also may be terminated in the event that sufficient funds are not available either from the Community Development Block Grant Program or from Program Income in order to carry out the purposes of this agreement.
XIV. Termination for Cause
. . . Cause should include but not be limited to:
1. Ineffective or improper use of Community Development funds included in Project Budget;
2. Failure to comply with either the terms or conditions of this Agreement and Appendices, Policies, or Certifications of the Community Development Agency;
3. Submittal to the Community Development Agency of reports which are incorrect or incomplete *273 in any material respect, or not in a timely manner; or
4. If for any reason the carrying out of this Agreement is rendered improbable or infeasible . . .
XV. Termination for Convenience
This agreement may be terminated in whole or in part when both parties agree that the continuation of the activity would not produce beneficial results commensurate with the further expenditure of funds. The two parties shall agree upon the termination conditions, including the effective date and, in the case of partial terminations, the portion to be terminated. The Operating Agency shall not incur new obligation for the terminated portion after the effective date and shall cancel as many outstanding obligations as possible . . .
XVIII. Reversion of Assets
Upon expiration of this Agreement, the Operating Agency shall transfer to the Community Development Agency any funds on hand at the time of the expiration and any accounts receivable attributable to the use of said funds. Real property under the control of the Operating Agency that was acquired or improved in whole or in part with project funds in excess of $25,000 either is to be:
1. Used to meet one of the national objectives at 24 CFR 570.208 for a period of five (5) years beyond the expiration date of this Agreement, or for such a longer period of time as the Community Development Agency may determine to be appropriate; or
2. Disposed of in a manner that results in the Community Development Agency being reimbursed in the amount of the fair market value of the property less any portion of the value attributable to expenditures of non-project funds for acquisition of, or improvements to, the property; said reimbursement not being required after said period of five (5) years.
The contract was amended twice. The first amendment, executed on October 1, 1990, amended the agreement “by eliminating the date June 30, 1992 from Paragraph ‘II. Time of Performance’ and substituting therefore the date ‘June 30, 1995.’ ” It further provided that the amendment shall be attached to and made a part of the agreement and that “nothing in this Amendment shall be interpreted or construed as changing the original Agreement with the exception of the changes listed herein.” The second amendment, executed on June 30, 1995, amended the agreement “by eliminating the date June 30, 1995 from Paragraph ‘II. Time of Performance' and substituting, therefore, the date ‘June 30, 2000.’ ” It also changed the contract project number and replaced three appendixes. As with the earlier amendment, it provided that this amendment shall be attached to and made a part of the agreement and that “nothing in this Amendment shall be interpreted or construed as changing the original Agreement with the exception of the changes listed herein.” Neither amendment listed the deletion of the second sentence of paragraph II as a change.
On May 26, 2000, the City notified FRAHC in writing that it would not renew the contract “for the program year commencing July 1,2000.” The City did not terminate the contract for cause pursuant to paragraph XTV of the contract. The City and FRAHC did not agree to terminate the contract for convenience pursuant to paragraph XV of the contract. The City did not terminate the contract due to insufficient funds from either the Community Development Block Program or from Program Income.
The City has demanded the return of program funds and notes and the assignment of notes and mortgages evidencing program loans pursuant to Paragraph XVIII of the Agreement. FRAHC has not complied with that demand.
DISCUSSION
Notwithstanding the fact that the agreement was not terminated for cause, convenience, or insufficient funds, the City contends that it was entitled to end the contract. FRAHC, on the other hand, argues that the contract was automatically renewed pursuant to paragraph II. “The interpretation of a contract presents a question of law for the court, except to the extent disputed facts bear upon such interpretation.” USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989). The City and FRAHC have agreed that there are no disputed facts which bear upon interpretation of their contract.
The City’s initial position, that the second sentence of paragraph lithe renewal clausewas deleted by virtue of the amendments, is without merit. Whatever inferences might have been possible had the amendments simply changed the date for completion of services and made no reference to the remaining provisions of the agreement, the inference the City seeks to draw is expressly precluded by the reservation language in those amendments.[2] The parties agreed that nothing in the amendments “shall be interpreted or construed as changing the original Agreement with the exception of the changes listed herein.” Deletion of the second sentence of paragraph II is not a change “listed” on either of the amendments. Therefore, the second sentence of paragraph II was not deleted.
Next, the City maintains that the clear and unambiguous meaning of the second sentence of paragraph II is that the agreement shall renew automatically from year to year unless one party notifies the other party that it shall not be renewed.. “[I]t is fairly obvious,” argues the City, “that the [renewal] provision was intended to deal with the situation which would arise if the parties were silent on the subject of renewal at the end of the contract term.” In other words, the City asks this Court to construe the words “this agreement shall renew automatically from year to year thereafter *274 unless terminated for cause or for convenience as herein provided ... [or if] sufficient funds are not available . . .” as meaning that, if there is silence, the agreement is automatically renewed for one year, but if either party, for any reason or for no reason whatsoever, expressly communicates an intent to terminate the contract, the agreement shall terminate on the date specified in the first sentence of paragraph II. The parties could have executed an agreement with such a provision, but they did not. Whatever words the City may wish it had drafted, it cannot reach its desired result by contorting the plain and unambiguous language it did draft. The meaning that the City ascribes to the words in the renewal provision bears no resemblance to the words actually contained in the agreement.
A clear and unambiguous writing must be enforced according to its terms. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992). Further, words that are plain and free from ambiguity “must be construed in accordance with their ordinary and usual sense." Massachusetts Municipal Wholesale Electric Co. v. City of Springfield, 49 Mass.App.Ct. 108, 111 (2000). Whenever practicable, every word in a contract should be given some effect so that no word or phrase is rendered meaningless. Lexington Insurance Co. v. All Regions Chemical Labs, Inc., 419 Mass. 712, 713 (1995).
There is no ambiguity in paragraph II of the contract. The renewal clause means that if the agreement has not been terminated on any of the three bases termination for cause, convenience, or insufficient fundsspelled out after the term “unless” in the renewal clause, the contract will terminate upon the date by which services are to be completed. Unilateral expression of a desire to terminate is not an exception which follows the word “unless” in the renewal clause and, therefore, cannot be the basis to prevent the contract from being automatically renewed. See American Heritage Dictionary of the English Language 1955 (3rd ed. 1996) (defining “unless” as “except on the condition that; except under the circumstances that”). Moreover, interpreting the renewal clause to mean that renewal is automatic unless one of the three specified methods of termination have been employed makes the contract a rational business instrument. See Hastings Associates, Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass.App.Ct. 162, 170 (1997) (contract should be interpreted in a way which will make it a rational business instrument that will effectuate the apparent intention of the parties).
The necessity of construing the contract as a whole does not, as the City argues, preclude construing the renewal clause as meaning that the agreement is automatically renewed for one year unless it is terminated for one of the three specific reasons enumerated in that clause. Construing a contract “as a whole” does not entail ignoring the plain and unambiguous language chosen by the parties to express their obligations. “The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.” USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116(1989).
The inclusion, in the first sentence of paragraph II, of a specific date by which services are to be completed is not inconsistent with a provision in the very same paragraph specifying the circumstances under which the agreement automatically will renew for one year. The agreement, as amended, provides that all of the services required under the contract “shall be completed by June 30, 2000.” The date in the first sentence is the completion date. If the services have not been completed by FRAHC by that date, such failure of completion would be a ground for the City to terminate the agreement for cause. When that date is reached, the contract renews automatically unless terminated through one of the specific termination methods listed in the second sentence. Similarly, paragraph XVIII of the contract and the federal regulation on which it is based, 24 C.F.R. §570.503(8),[3] do not mandate disregarding the plain and unambiguous language of the renewal clause in order to avoid a conflict. Both paragraph XVIII and 24 C.F.R. §570.503(8) address what happens to assets in the hands of FRAHC “(u)pon expiration” of the agreement. They do not require the contract to expire at any given time or after a certain number of automatically renewed terms.[4] Paragraph XVIII does not govern when and how the contract itself is to expire; it simply outlines what must happen when the contract does expire. The mere fact that the parties’ contemplated expiration of the agreement does not preclude their contemplation of automatic renewal under specified circumstances.[5] If the contract is terminated for any of the reasons specified in the second sentence of paragraph II, the agreement will expire on the date specified in the first sentence of paragraph II; at that time, paragraph XVIII of the contract controls what happens to the assets.
Finally, the City contends that if, indeed, the second sentence of paragraph II means what it says, then it is unenforceable because it is illegal and against public policy. General Laws c. 44, §31 is the only statute cited by the City in support of the proposition that the renewal clause is illegal. That statute prevents any department financed by municipal revenue from incurring a liability in excess of its appropriation. It is irrelevant to the renewal clause at issue. The contract between the City and FRAHC is funded by federal funds and program income. If sufficient funds are not available to carry out the purposes of the agreement either from the federal government pursuant to the Community Development Block Grant Program or from program income, the agreement can be terminated by the City. Nothing in the renewal clause requires the City’s Community Development Agency to incur any liability in excess of its appropriation.
*275 The City also fails to demonstrate that the automatic renewal clause is unenforceable on grounds of public policy. In the absence of legislation to the contrary or some overriding societal interest, parties are generally free to contract as they wish. “ ‘Public policy’ in this context refers to a court’s conviction, grounded’ in legislation and precedent, that denying enforcement of a contractual term is necessary to protect some aspect of the public welfare.” Beacon Hill Civic Ass’n v. Ristorante Toscano, Inc., 422 Mass. 318, 321 (1996). See also A.Z. v. B.Z., 431 Mass. 150, 160-61 (2000) (“To determine public policy, we look to the expressions of the Legislature and to those of this court”); Restatement (Second) of Contracts §179 (1981) (“A public policy against the enforcement of promises or other terms may be derived by the court from (a) legislation relevant to such a policy, or (b) the need to protect some aspect of the public welfare ...”). The City has identified no legislation that speaks to the renewal clause at issue. Nor has the City identified any appellate court decision which expresses the view that a contract entered into with a municipality may not automatically continue where the contract allows the municipality to terminate for cause, mutual agreement, or insufficient funding. In fact, in reference to a collective bargaining agreement between a union and a transit authority, which was far more difficult to terminate than the contract between the City and FRAHC, the Supreme Judicial Court held that “(n]o controlling public policy [was] violated by the ’perpetual’ aspect” of such an agreement. Local 589 Amalgamated Transit Union v. MBTA, 414 Mass. 323, 328 (1993) (because no change can be made, without mutual consent, in an agreement with a term of three years and annual terms thereafter, it has no express term, but it could lose that perpetual quality if the parties so agreed, the union is decertified, or the Legislature expressly provides otherwise).[6] Just as transit workers provide a vital service to a metropolis which the contracting parties may have wanted to guard against interruption, so too FRAHC, a nonprofit corporation created to administer the City’s federally funded affordable housing grant programs, provides a vital service, which the renewal clause protects from needless interruption. There is no need to protect some aspect of the public welfare that would warrant not enforcing the contract in the manner agreed upon by the parties.
Duggan v. City of Taunton, 360 Mass. 644 (1971), upon which the City relies, does not compel a ruling that an automatic renewal clause in a contract to manage affordable housing programs violates public policy. The contract in Duggan had a definite term. It was between an attorney and a municipal light plant commission; the commission agreed to employ the attorney at a specific rate of compensation for three years, with said counsel to act under the title of “general counsel” and to render all legal advice and to represent the commission in all matters which maybe pending or hereinafter instituted. Id. at 644-45 n.3. The Court, focusing on breadth of the commitment made by the commission and the special nature of services provided by attorneys, held that public policy generally requires that a municipal body or board have the freedom, like any other .client, to select an attorney and to change attorneys. Id. at 648-49. “Between a municipal body or board and its legal advisers, it is desirable that there be a relationship of trust and confidence . . . We should be slow to permit a ‘lame duck’ municipal body to dictate to its successors the choice of the attorneys who are to advise them." Id. at 649-50. The public policy at stake in Duggan is not implicated by the renewal clause at issue. Enforcement of the automatic renewal clause does not offend public policy because it is not “manifestly injurious to the public interest and welfare.” Adams v. East Boston Co., 236 Mass. 121, 128 (1920).
In sum, the City had no right unilaterally to terminate the contract and, by doing so, it materially breached the contract. FRAHC is entitled to summary judgment in its favor on liability, on Count I of its counterclaim alleging breach of contract by the City.[7] The City is not entitled to judgment in its favor dismissing the defendant’s counterclaims. The City also is not entitled to judgment in its favor on any of the counts in its complaint.
ORDER
For the foregoing reasons, it is ORDERED that the Fall River Affordable Housing Corporation’s Motion for Summary Judgment as to liability as to Count I of the Counterclaim is ALLOWED, and the City of Fall River’s Cross Motion for Summary Judgment is DENIED.

 An additional count to reach and apply funds held by Slade’s Ferry Bank has been dismissed without prejudice.

 In any event, the inference that the second sentence of paragraph II was deleted simply because the date in the first sentence of that paragraph was changed is not a rational one. The fact that the initial date was three years from the date of commencement of performance and the second amendment inserted a date five years from the date then in the agreement also does not lend itself to a rational inference that the renewal provision in the second sentence was thereby deleted, nor does it demonstrate that the parties did not intend the contract to renew automatically for one year should the contract not be terminated in the method set out in the second sentence of Paragraph II.

 24 C.F.R. §570.503(8) provides, in relevant part, as follows: ‘The agreement shall specify that upon its expiration the subrecipient shall transfer to the recipient any CDBG funds on hand at the time of expiration and any accounts receivable attributable to the use of CDBG funds . . .”

 If, indeed, federal law required the contract to expire upon the date set forth in the first sentence of paragraph II, that presumably would a basis to terminate the agreement “for cause” as the carrying out of the contract would be rendered “infeasible.” The City, however, agrees that it did not terminate for cause.

 Even if there were some difficulty in ascertaining the meaning of the word “expiration” in the context of the agreement between the City and FRAHCwhich there is notany ambiguity must be resolved against the City which drafted *276 the contract; “it would have been an easy matter to state the provisions of the section in dispute in form and words which would leave no doubt as to its intent." MacArthur v. Massachusetts Hospital Service, Inc., 343 Mass. 670, 672 (1962) (where contract permits two rational interpretations, courts should choose the one that is more favorable to the party which did not draft the contract).

 See also Comets Community Youth Center, Inc. v. Town of Norfolk, Civil Action No. 97-01405, 1998 WL 1184130 (Quinlan, J.) (8 Mass. L. Rptr. 166] (with reference to lease between skating facility and town, the court found that “(i]n general, automatic renewal provisions are enforceable in Massachusetts”).

 FRAHC’s motion for summary judgment on liability asks the court to conclude that the City breached the contract by unilateral termination without cause and award FRAHC summary judgment; its motion'does not reference Count II of the counterclaim, which seeks relief under G.L.c. 93A, 811, and this Court deems the chapter 93A claim beyond the scope of FRAHC's motion.