NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-973

RANGEWAY OWNER, LLC

vs.

BILLERICA DEVELOPERS, LLC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Billerica Developers, LLC, appeals from a Superior Court judgment entered in favor of the plaintiff, Rangeway Owner, LLC, on cross motions for judgment on the pleadings. On appeal, the defendant claims that the judge erred in concluding that: (1) the Easement Agreement, dated November 18, 2008, incorporates the agreement attached as Exhibit D, and that, consequently, the terms of the sewer extension provision contained therein run with the plaintiff's land; and (2) the plaintiff exercised its rights in accordance with the terms of the sewer extension provision. We affirm.

Discussion. 1. Standard of review. "We review de novo a judge's order allowing a motion for judgment on the pleadings

under Mass. R. Civ. P. 12 (c)."  Champa v. Weston Pub. Sch., 473

Mass. 86, 90 (2015), quoting Merriam v. Demoulas Super Mkts.,

Inc., 464 Mass. 721, 726 (2013).  "The interpretation of a

contract is a question of law, which we [also] review de novo."

James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 667

(2018).

     2.  Incorporation by reference.  The defendant claims that

the judge erred in concluding that the Easement Agreement

incorporates the agreement attached as Exhibit D.  We disagree.[1]

     "The object of the court is to construe the contract as a

whole, in a reasonable and practical way, consistent with its

language, background, and purpose."  USM Corp. v. Arthur D.

Little Sys., Inc., 28 Mass. App. Ct. 108, 116 (1989).

Generally, "a contract should be construed to give it effect as

a rational business instrument and in a manner which will carry

out the intent of the parties" (citation omitted).  Starr v.

Fordham, 420 Mass. 178, 192 (1995).

> "Incorporation by reference is a common tool in the
> drafting of contracts.  Nevertheless, the language used in
> a contract to incorporate extrinsic material by reference

---

[1] As discussed, infra, we disagree with the judge's
conclusion that the Statute of Frauds would otherwise bar the
enforceability of Exhibit D as a standalone contract.  We
therefore do not consider the absence of signatures on Exhibit D
in our incorporation-by-reference inquiry and need not address
the defendant's arguments against the judge's attribution of
"significant weight" to such absence.

2

. . . must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history)" (quotations and citations omitted).

NSTAR Elec. Co. v. Department of Pub. Utils., 462 Mass. 381, 394 (2012).

Here, the Easement Agreement's statement of consideration expressly references "the agreement attached hereto as Exhibit D" not as mere background or relevant material, but as a central aspect of the bargained-for exchange between the parties. We agree with the judge's conclusion that the plain meaning of the text expresses the parties' intent to be bound by the terms of Exhibit D. See Starr, 420 Mass. at 192.

The defendant counters that two provisions of Exhibit D support its position that the original parties intended for Exhibit D to operate as a separate agreement: (1) section 2 (the sewer extension provision) states that its terms are enforceable "whether or not the Easement Agreement remains in effect"; and (2) section 4.b. (the merger clause) states, "[t]his Agreement represents the entire agreement by and between the parties hereto with respect to the subject matter hereof, and it may not be changed except by written agreement duly executed by the parties hereto." We disagree on both points.

With respect to section 2, the aforementioned excerpt is functionally equivalent to a survival clause, which is a type of provision commonly included in individual contracts to preserve specified rights and duties post-termination.  See, e.g., Sullivan v. etectRx, Inc., 67 F.4th 487, 492-493 (1st Cir. 2023); Bossé v. New York Life Ins. Co., 992 F.3d 20, 29 (1st Cir. 2021).  We are therefore unpersuaded that this excerpt tends to prove the original parties' intent that Exhibit D operate independently.

With respect to section 4.b., we note that agreements that contain merger clauses may be found not to be fully integrated.[2] See Chambers v. Gold Medal Bakery, Inc., 83 Mass. App. Ct. 234, 242-243 (2013) ("although such a clause is evidence of integration . . . it is not conclusive on the question").  See also Antonellis v. Northgate Constr. Corp., 362 Mass. 847, 849 (1973) ("Whether there was an integration . . . was a question of the intention of the parties on which proof could be received ranging beyond the writing proper").  As discussed, supra, the original parties' intent for Exhibit D to be incorporated into the Easement Agreement is expressed clearly by the Easement

---

[2] "A fully integrated agreement is a statement which the parties have adopted as a complete and exclusive expression of their agreement" (citation omitted).  Chambers v. Gold Medal Bakery, Inc., 83 Mass. App. Ct. 234, 242 (2013).

4

Agreement's statement of consideration.  In light of this, the boilerplate merger clause of section 4.b. is not controlling.  See Chambers, supra.  The judge did not err in construing the Easement Agreement and Exhibit D as a single contract.

3.  Applicability of section V.D.  Next, the defendant claims that the judge erred in concluding that the terms of section V.D. apply to the sewer extension provision.  Specifically, the defendant contends that the provision applies only to the "[t]he rights, duties, easements and agreements herein contained," whereas the sewer extension provision is "elsewhere contained."[3]  We disagree.

As discussed, supra, the Easement Agreement incorporates Exhibit D by reference.  The rights, duties, easements, and agreements set forth in Exhibit D are therefore contained within

---

[3] The defendant also asserts that, because section V.D. does not capitalize the word "agreements," and section IV creates the defined term "Agreements" for the Easement Agreement and Exhibit D collectively, the parties did not intend for section V.D. to apply to both the Easement Agreement and Exhibit D.  However, contrary to the defendant's assertion, section IV does not create the defined term "Agreements" within the Easement Agreement itself; rather, it creates the defined term as part of the required language to be included in "any deed or deeds granting [Aspen Apartments], its successors and assigns, and/or their designees title to the Aspen Apartments Land."

5

the Easement Agreement, and are consequently included within the phrase, "herein contained."[4]

4. <u>Exhibit D as a standalone contract</u>. Even if Exhibit D were not incorporated into the Easement Agreement, the plaintiff would be entitled to enforce the terms of the sewer extension provision. See <u>Colony of Wellfleet, Inc</u>. v. <u>Harris</u>, 71 Mass. App. Ct. 522, 529 (2008) ("This court will affirm a judgment as long as the result is correct on any ground apparent on the record that supports the result reached by the trial court").

The sewer extension provision is comprised of two parts: (1) an affirmative covenant to extend the sewer pipe to the properties' boundary line (conditioned on the occurrence of certain events); and (2) an easement for the use of the extended sewer pipe. Accordingly, the plaintiff's right to enforce the sewer extension provision turns on whether the first component meets the requirements of an equitable servitude and the second meets those of an easement appurtenant.

a. <u>Equitable servitude</u>. The following are the requirements of an equitable servitude:

_____

[4] The defendant also claims that the judge erred in concluding that section IV of the Easement Agreement evidences the original parties' intent for the sewer extension provision run with the plaintiff's land. However, we need not address this argument, as such intent is independently established by section V.D.

6

"(1) [t]he [servitude] must be created in a written instrument which satisfies the Statute of Frauds[;] (2) [t]he original parties must have intended that the [servitude] be enforceable against subsequent grantees of the land burdened with the [servitude] by subsequent grantees of adjoining or other parcels of land benefitted by it[;] (3) [t]he [servitude] must 'touch and concern' the burdened and benefitted land[;] . . . [and] (4) [a] subsequent owner of the burdened land must have had notice of the [servitude,] actual . . . [or] constructive, by virtue of the restriction being recorded in a prior conveyance in the chain of title" (quotation and citation omitted).

Sullivan v. O'Connor, 81 Mass. App. Ct. 200, 213 (2012).

Here, only the first two elements are disputed. First, with respect to the Statute of Frauds,[5] we disagree with the judge's conclusion that "Exhibit D could not be a separate agreement as it would have been null and void given there was no signature executing that 'agreement.'"

"Whether a writing satisfies the Statute of Frauds is a question of law." Simon v. Simon, 35 Mass. App. Ct. 705, 709 (1994). Multiple documents pertinent to a transaction may be read together to determine whether the Statute of Frauds has been satisfied. See Tzitzon Realty Co. v. Mustonen, 352 Mass.

---

[5] "As a black letter rule, the Statute of Frauds bars suit '[u]pon a contract for the sale of lands . . . or of any interest in or concerning them . . . [u]nless the promise, contract or agreement . . . is in writing and signed by the party to be charged therewith.'" Hurtubise v. McPherson, 80 Mass. App. Ct. 186, 188 (2011), quoting G. L. c. 259, § 1.

7

648, 653 (1967).  The writings may, but need not, incorporate each other by reference.  Id.

Where, as here, an unsigned document is attached to a signed writing, and the signed writing explicitly references the unsigned document, the unsigned document will be considered part of the signed writing for purposes of the Statute of Frauds.  See Roberts v. Enterprise Rent-A-Car Co. of Boston, 438 Mass. 187, 195 (2002).  See also Restatement (Second) of Contracts § 132 comment c (1979) ("It is sufficient that the signed writing refers to the unsigned writing explicitly or by implication, or that the party to be charged physically attaches one document to the other or encloses them in the same envelope").  The signature requirement of the Statute of Frauds is therefore no bar to the enforceability of Exhibit D as a standalone contract.

Second, with respect to the intent element, the "intent to create a servitude [may be] express or implied . . . with no particular form of words . . . required[,] and an omitted term of art effecting the parties' clear purpose . . . [may be] inferred" (quotations and citations omitted).  Sullivan, 81 Mass. App. Ct. at 208.

Here, the original parties' intent for the benefits of the affirmative covenant to run with the plaintiff's land is implied

8

by the nature of the easement that accompanies it.  As discussed, infra, the sewer extension provision creates an easement appurtenant, and the scope of the easement -- the capacity requirements of the extended sewer pipe -- is determined independently from the identity and needs of the person or entity exercising the extension right.  See McLaughlin v. Selectmen of Amherst, 422 Mass. 359, 364 (1996) ("We construe the scope of an easement from the parties' intent, which we ascertain from the relevant instruments and the objective circumstances to which they refer").  In light of this, we think the most reasonable inference is that the original parties intended not only for the easement to run with the land, but also the affirmative covenant.  See USM Corp., 28 Mass. App. Ct. at 116.

b.  Easement appurtenant.  "An easement is appurtenant to land when the easement is created to benefit and does benefit the possessor of the land in his use of the land" (citation omitted).  Schwartzman v. Schoening, 41 Mass. App. Ct. 220, 223 (1996).  We presume that easements are appurtenant, not in gross.  Id.  "An easement is not presumed to be personal unless it cannot be construed fairly as appurtenant to some estate" (citation omitted).  Id.  The omission of language, such as "and his heirs and assigns," in granting an easement, is

"inconsequential" to whether the easement runs with the land.
Kenney v. Marino, 350 Mass. 534, 535 (1966).

The sewer extension provision expressly states its purpose:
to enable access to the public sewer service.  This, on its
face, benefits the easement holder in their use of the land; at
minimum, one could "fairly construe" it as appurtenant to the
estate.  See Schwartzman, 41 Mass. App. Ct. at 223.
Accordingly, we presume an easement appurtenant.  See id.
Although the language of the sewer extension provision imposes a
duty on "Garden Homes . . . [and] its successors in title,"
while granting a right merely to "Curriculum Associates," the
absence of words of inheritance does not rebut the presumption
of appurtenance.  See Kenney, 350 Mass. at 535.  We therefore
conclude that the sewer extension provision creates an easement
appurtenant.[6]

5.  Adherence to sewer extension terms.  The defendant
claims that the judge erred in concluding that the plaintiff

---

[6] The defendant also argues for the first time on appeal
that "Garden Homes [could not] have possibly granted an easement
over its land where all of the contracting parties expressly
acknowledged . . . that Aspen Apartments was the owner of the
Garden Homes Land at the time of the parties' contract."  "An
issue not raised or argued below may not be argued for the first
time on appeal."  Century Fire & Marine Ins. Corp. v. Bank of
New England-Bristol County., N.A., 405 Mass. 420, 421 n.2
(1989).  Accordingly, this issue is waived.

10

exercised its rights in accordance with the sewer extension provision, as the provision is exercisable for the exclusive purpose of connecting "the Curriculum Associates Business to the public sewer service" (emphasis added), while "[t]he anticipated uses on the [plaintiff's] property are not yet known,"[7]  We disagree.

The sewer extension provision provides merely that "Garden Homes shall extend the sewer pipe . . . so that Curriculum Associates may connect the Curriculum Associates Business[8] to the public sewer service"; it does not state that this is the "exclusive purpose" for the extension.[9]  While this excerpt may

---

[7] Similarly, the defendant claims that the sewer extension provision "expresses a clear intention that only Curriculum Associates, and not its successors," may elect to exercise the rights granted by the sewer extension provision.  Specifically, the defendant points to the provision's imposition of a duty on "Garden Homes . . . [and] its successors in title," while granting a right merely to "Curriculum Associates."  However, as discussed, supra:  (1) section V.D. expresses the original parties' intent for the sewer extension provision to run with the plaintiff's land; and (2) the absence of words of inheritance is nondispositive, see Kenney, 350 Mass. at 535.  Accordingly, the plaintiff, as Curriculum Associates' successor in title, is entitled to enforce the rights granted by the sewer extension provision.

[8] Exhibit D defines "Curriculum Associates Business" as the publishing business owned and operated by Curriculum Associates.

[9] The defendant contends that the sewer extension provision creates a unilateral option right, and, citing to Westinghouse Broadcasting Co. v. New England Patriots Football Club, Inc., 10 Mass. App. Ct. 70, 73 (1980), argues that the provision therefore must be "strictly construed."  Even if the defendant's

11

be relevant in determining the scope of the easement, the narrow meaning ascribed to it by the defendant, in the absence of explicit language stating as such, is belied by the intent of the original parties that the sewer extension provision run with

---

characterization were accurate, which we need not decide, Westinghouse does not stand for the proposition that the conditions for the exercise of an option must be interpreted narrowly, but rather that, once the meaning of such conditions is ascertained, courts will be relatively less likely to inquire into the materiality of a breach thereof.  See id.

the land.[10]  See McLaughlin, 422 Mass. at 364; USM Corp., 28

Mass. App. Ct. at 116.[11]

Judgment affirmed.

By the Court (Meade,
  Hodgens & Toone, JJ.[12]),

*Paul Little*

Clerk

Entered:  May 20, 2025.

---

[10] The defendant also contends that the judge erred in concluding that the plaintiff exercised its rights in accordance with the sewer extension provision, as the plaintiff failed to demonstrate that it had previously obtained the requisite governmental approvals.

The defendant raised this argument for the first time in its emergency motion for reconsideration.  The decision whether to allow a motion for reconsideration rests within the sound discretion of the motion judge.  See Audubon Hill S. Condominium Ass'n v. Community Ass'n Underwriters of Am., Inc., 82 Mass. App. Ct. 461, 470 (2012).  We discern no abuse of discretion in the judge's ruling, as the defendant "presented no evidence or argument that could not have been presented prior to [judgment on the pleadings]."  Blake v. Hometown Am. Communities, Inc., 486 Mass. 268, 278 (2020).  "There is no error in the denial of a motion that merely seeks, as this one did, a 'second bite at the apple.'"  Id.

Notwithstanding the above, the sewer extension provision does not require that governmental approvals be obtained prior to the plaintiff's exercise of its sewer extension right; it merely sets the approvals as a condition precedent to the defendant's obligation to extend the sewer pipe.

[11] The plaintiff's request for appellate costs and fees is denied.

[12] The panelists are listed in order of seniority.